### LEHIGH VALLEY R. CO. v. JOHN LYSAGHT, Limited.*

(Circuit Court of Appeals, Second Circuit. February 23, 1921.)

#### No. 108.

1. **Carriers ☞178—Railroad holding carload shipment as warehouseman becomes liable as carrier on receipt of forwarding order.**

   Under the tariff regulations of a railroad company, providing that carload shipments arriving at its general New York terminal and there held for further directions, after a stated term, should be subject to demurrage charges, and the liability of the company therefor should be that of warehouseman only, where a car was so held, the liability of the company as carrier *held* to have reattached on its receipt of an order for forwarding the shipment.

2. **Carriers ☞108—Statutory liability to holder of bill of lading extends to common-law liability for loss or damage "caused by it."**

   Interstate Commerce Act, as amended by Act March 4, 1915 (Comp. St. § 8604a), incorporating what is known as the Carmack Amendment, providing that a carrier shall be liable to the holder of a bill of lading for any loss, damage, or injury to the property "caused by it," does not limit the liability of a carrier to that of an ordinary bailee for its own negligence only, but covers any loss or damage for which it would be liable at common law.

3. **Carriers ☞131—Answer in action for loss of property destroyed in terminal yard by explosion alleging nearby boat as origin thereof held to state no defense.**

   In an action against a railroad company for loss of property destroyed while standing in defendant's terminal yard by an explosion of explosives in other cars in the yard, where it was alleged that defendant was negligent in failing to provide watchman or fire equipment, an answer alleging that the fire which caused the explosion originated on a boat lying at the terminal over which defendant had no control *held* not to state a defense.

   Hough, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of New York.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 254 U. S. —, 41 Sup. Ct. 625, 65 L. Ed. —.

Action at law by John Lysaght, Limited, against the Lehigh Valley Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

For opinion below, see 254 Fed. 351.

Hornblower, Miller & Garrison, of New York City (Lindley M. Garrison and Edgar H. Boles, both of New York City, George S. Hobart, of Newark, N. J., and Charles A. Boston, of New York City, of counsel), for plaintiff in error.

Hayden & Post, of New York City (W. K. Post, of New York City, of counsel), for defendant in error.

Butler, Wycoff & Campbell, of New York City (Frederick B. Campbell and Thomas R. Rutter, both of New York City, of counsel), amici curiæ.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge. Lysaght, Limited, is the holder of two through domestic bills of lading of the Missouri, Kansas & Texas Railway Company for transportation of plates of spelters from Kansas to New York, state of New York, for export, under which the Lehigh Valley Railroad Company is the last connecting carrier. The two cars arrived July 17 and 18, 1916, respectively, and the goods were destroyed by the explosion at the Black Tom Terminal on the night of July 29/30, considered in our opinion in the case of Lehigh Valley Railroad Co. v. Allied Machinery Co. of America, 271 Fed. 900, handed down herewith.

The defendant's tariff regulations applicable to the situation are:

"A–1. All carload shipments for delivery locally or to vessels in New York Harbor, transported under domestic bill of lading to New York, not consigned direct to an established freight station of this company, as shown in list of station deliveries on page 10 of this tariff, will be held in or on cars, piers or warehouses at Jersey City, N. J., or Jersey City (National Docks), N. J., until receipt of written order for disposition from consignee or party notified of arrival under the terms of the bill of lading, and while so held at Jersey City, N. J., or Jersey City (National Docks), N. J., awaiting such orders for disposition, the freight will be subject to car demurrage or storage rules as on file with the Interstate Commerce Commission, and the carrier shall not be liable for loss, damage or delay, except in case of negligence of the carrier."

"16. Delivery orders and vessel permits limiting the time for delivery will only be accepted with the understanding that same will be accomplished with as reasonable dispatch as conditions and the general business of the company will permit."

"8. Cars containing export freight (not subject to warehouse storage rules or not covered by through export bills of lading) will be allowed 15 days' free time at terminal points in New York Harbor.

\* \* \* \* \* \* \* \* \* \*

"(b) Free time to be computed from the first 7 a. m. after the day on which notice of arrival is sent to consignee.

"Note.—In computing time Sundays and legal holidays (national, state, and municipal) will be excluded. When a legal holiday falls on Sunday, the following Monday will be excluded.

"The foregoing rule will be effective on shipments forwarded from points of origin on and after May 2, 1916."

Section 1 of the bill of lading reads:

"No carrier or party in possession of any of the property herein described shall be liable for any loss thereof or damage thereto or delay caused by the act of God, the public enemy, quarantine, the authority of law, or the act or default of the shipper or owner, or for difference in the weights of grain, seed, or other commodities caused by natural shrinkage or discrepancies in elevator weights. For loss, damage or delay caused by fire occurring after forty-eight hours (exclusive of legal holidays) after notice of the arrival of the property at destination or at port of export (if intended for export) has been duly sent or given, the carrier's liability shall be that of warehouseman only."

The plaintiff gave orders for delivery to the steamer at New York as follows:

"New York, 7/29/16.

"Messrs. Lehigh Valley Railroad Co., 6 Broadway, City—Gentlemen: We inclose herewith original bills of lading indorsed notices of arrival and check for freight for the following cars, which are to be delivered to the S/S Wells City at Pier 69, North River, on August 2/16. We are inclosing check for freight and would request that you kindly send us receipted freight bills.

| Car | C., M. & St. P. | 54326 | 932 plates of spelter |
| " | S. O. U. | 27110 | 813 plates of spelter |
| " | N. W. | 21715 | 837 plates of spelter |
| " | Erie | 72290 | 832 plates of spelter |

"The loading permit has been mailed direct to the S/S and we trust you will give this matter your immediate attention and see that these consignments are delivered within the time specified and that the dock receipts are sent to us at the earliest possible moment.

"Yours truly,                    F. B. Vandergrift & Company,
                                   "Wm. W. Rich, Pres."

September 25, 1917, Lysaght, Limited, brought this action on the bills of lading against the railroad company as insurer without any charge of negligence. January 23, 1918, the defendant demurred to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action, which demurrer was overruled by L. Hand, J.

June 1, 1918, the defendant's answer admitted the foregoing statements, but denied knowledge or information sufficient to form a belief as to whether the goods were destroyed by fire or exclusively by fire. It also set up three separate defenses, summarized by defendant's counsel as follows:

"(1) That the railroad company and plaintiff were alike innocent victims of a great public calamity, through the explosion of munitions of war in course of transportation in connection with the European War, which exploded without fault of defendant from causes beyond its control, and produced results likewise beyond its control.

"(2) That the said explosives were in interstate and foreign commerce in compliance with the Interstate Commerce and Federal Explosives Transportation Law, and the regulations of the Interstate Commerce Commission, with all of which the railroad company had duly complied; that the destruction complained of was caused by such explosives, which were munitions of war; and that their explosion and its results was the result of causes wholly beyond defendant's control.

"(3) That such explosives as aforesaid were not in the railroad company's possession or control, but on nearby public waters, and the railroad company was free from fault."

The plaintiff's demurrer to these defenses was sustained by L. Hand, J.

[1] When the cause came on for trial before Judge Mayer, the defendant moved to dismiss on the ground that its liability was that of warehouseman, and not of carrier, which motion was denied, because overruled on demurrer by Judge Hand. Without going into the question whether the defendant waived this objection by answering over, we think it was bad in law. The goods were in course of transportation, and the delay at the Black Tom Terminal during the period that the plaintiff failed to give shipping instructions for export for either 48 hours after notice of arrival under the bill of lading or for 15 days under the tariff changed the defendant's liability to that of warehouseman, but as soon as shipping instructions were given, July 29, at 1:42 p. m., its liability as carrier to transport the goods to New York, county of New York, was reinstated. This is expressly stated by A–1 of the company's tariff. The only effect of article 8 of the tariff is to postpone the time at which demurrage begins to run. The other provisions of section 16, which give the railroad company a reasonable time within which to deliver alongside the steamer for export, in no way affect its liability as carrier or make it a warehouseman. There is nothing in the suggestion that lighterage to New York is a mere terminal service. The railroad company, having agreed to deliver at New York, would have been responsible as common carrier, if the goods had been lost or damaged while on the lighter. Judge Hand concluded his opinion on the demurrer to the complaint as follows:

"It does not, of course, follow that the defendant became a carrier at the moment of receiving the order at 1:42 p. m. For example, it might be that that was too late for delivery that evening. If so, the defendant's liability would not attach until such time as it could have commenced delivery under the conditions of the harbor. All such considerations cannot be decided upon the pleadings; they must wait for the evidence developed at the trial. It does not follow, therefore, that on Sunday, July 30th, the defendant was not still holding as a warehouseman, but it equally does not follow that it was."

We go further, and hold that, had the case rested on the complaint and the denials of the answer, a verdict should have been directed for the plaintiff.

The defendant contends that, because July 29 was a Saturday and July 30 a Sunday, defendant's liability as common carrier could not have reattached before the explosion. It relies upon the Sunday laws of New York and New Jersey, but the Sunday laws of neither state prohibit the giving of shipping instructions or the transportation of goods on half holidays or Sundays. See sections 24 and 25 of the New York General Construction Law (Consol. Laws, c. 22), and Van Orden v. Simpson, 90 Misc. Rep. 322, 153 N. Y. Supp. 134; New Jersey Compiled Statutes, vol. 3, p. 3091, par. 5, § 1, and page 3092, par. 7, § 3.

Judge Mayer directed a verdict for the plaintiff, and the defendant has taken this writ of error to the judgment entered thereon.

[2] The liability of the defendant depends upon the Interstate Commerce Act and the uniform bill of lading approved by the Interstate Commerce Commission. The Act of March 4, 1915, c. 176, 38 Stat.,

L. 1196 (Comp. St. § 8604a), amending the Interstate Commerce Act, incorporates what is known as the Carmack Amendment, which reads, so far as material in this case, as follows:

"That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: Provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law.

"That the common carrier, railroad, or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the loss, damage, or injury shall have been sustained the amount of such loss, damage, or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof."

The defendant contends that it is not liable for any loss or damage not "caused by it," and alleges that this explosion was not caused by it. These words of the act were used to make the initial carrier liable for any loss or damage occurring during the whole course of transportation, whether caused by it or by a connecting carrier, though they apply, also, to each carrier as to loss or damage on its own line. Georgia Railway Co. v. Blish Milling Co., 241 U. S. 190, 36 Sup. Ct. 541, 60 L. Ed. 948. Congress cannot have intended to reduce the liability of common carriers to that of ordinary bailees for their own negligence only. Happier words than "caused by it" might have been used, but they fairly cover loss or damage for which the carrier would be liable at common law. See Adams Express Co. v. Croninger, 226 U. S. 491, 506, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; Cincinnati, etc., R. R. Co. v. Rankin, 241 U. S. 319, 326, 36 Sup. Ct. 555, 60 L. Ed. 1022, L. R. A. 1917A, 265.

Counsel for the railroad company make a very interesting argument to the effect that in the time of the general European War, when the defendant was compelled to carry these dangerous agencies, an explosion like this should be treated as an act of God. We are not persuaded by it. If it be better public policy to take this step in advance (a question we will not discuss), it must be taken by Congress, and not by the courts.

[3] Compliance with the requirements of the federal law as to the transportation of explosives does not fulfill the whole of the carrier's duty at common law. This subject has been considered in the case of Lehigh Valley Railroad Co. v. Allied Machinery Co. of America, 271 Fed. 900, handed down herewith. The carrier is bound, wherever the regulations of the Interstate Commerce Commission do not apply, to exercise due care according to the circumstances. Compliance with the regulations would not, for instance, justify the carrier in dispensing with watchmen or with fire equipment. If this is so, the number and competency of the watchmen and the efficiency of the fire equipment

are subjects for consideration. The New Jersey Court of Errors and Appeals held to this effect in New Jersey Fidelity, etc., Co. v. Lehigh Valley R. R. Co., 92 N. J. Law, 467, 105 Atl. 206, certiorari denied 249 U. S. 600, 39 Sup. Ct. 258, 63 L. Ed. 796; Howell v. Lehigh Valley R. R. Co., 109 Atl. 309, certiorari denied April 26, 1920, 253 U. S. 482, 40 Sup. Ct. 482, 64 L. Ed. 1024, and Royal Indemnity Co. v. Lehigh Valley R. R. Co., 109 Atl. 745, certiorai denied April 26, 1920, 253 U. S. 483, 40 Sup. Ct. 482, 64 L. Ed. 1024. It follows from the foregoing that the third defense, viz. that the fire originated on a boat lying at the defendant's terminal, with which it had no relations, would be no justification, if true.

The judgment is affirmed.

HOUGH, Circuit Judge (dissenting). The tariff regulations, and section 1 of the bill of lading, quoted above, have the force of law under existing statutes regulating commerce. Since negligence was not pleaded, the sole question in this case is whether the liability here insisted on is that of an insurer, or (to put it another way) was the railroad company, at the time of the explosion and in respect of plaintiff's goods, a warehouseman or an insurer?

The common law here relevant, and as crystallized in judicial declarations since Lord Mansfield's famous dictum, is authoritatively expressed in Pratt v. Railway Co., 95 U. S. 43, 24 L. Ed. 336; i. e., the liability of the carrier as carrier is fixed by accepting the property to be transported, and such acceptance is complete whenever the property comes into his possession with his assent. The liability continues until delivery or its equivalent. But the tariff regulations modified that historic rule, so that goods might be held at such a place as Black Tom "until receipt of the written order for disposition," and while so held the railway is liable as a warehouseman only.

The majority opinion, in holding that the liability of an insurer reattaches as soon as the carrier is told to send the goods forward, seems to me to lose sight of the reason for the change of law. Under these comparatively new regulations, common-law liability exists during the physical carriage and for a reasonable time before and after the completion thereof; the carriage itself being divided into steps or periods. When this carrier was told to send on the goods that were destroyed, and thenceforward until disaster occurred, the property remained in the same condition as for a long time before the receipt of notice, nor would the railroad have been under any obligation to move the goods until after the time of explosion.

To make the insurer's liability depend upon the date of telling the railway company to do something in futuro, instead of making it dependent upon what was actually being done, or what ought to have been in progress, at the time of disaster, seems to me wrong. No such holding is required by any authoritative decision. The reason and intent of the new regulations was to establish a correspondence between the duty imposed and the acts being done—i. e., when the carrier is carrying, he is an insurer; when he is warehousing he is a warehouseman.

It seems to me an unfortunate ruling to treat the regulations as if they were a penal statute, or something in derogation of common law; they are remedial legislation.

For these reasons I dissent.