## Armour & Co., Inc. *vs.* Rush Delivery Service, Inc.

Suffolk.  May 16, 1980. — September 15, 1980.

Present: Goodman, Dreben, & Kass, JJ.

*Carrier,* Goods.  *Warehouseman.  Contract,* Delivery of goods.

In an action seeking to recover from a licensed common carrier the value of a cargo of meat which had been stolen from a trailer, evidence that, after a consignee had refused to accept a delivery of meat because it was too late in the day, the plaintiff agreed that the defendant could leave the trailer in the plaintiff's yard overnight provided that certain security measures were taken and the trailer would remain the defendant's "responsibility" was sufficient to warrant findings that the plaintiff did not take possession or control of the trailer by allowing the defendant to use its parking lot, and that the defendant agreed to assume responsibility for the cargo as a common carrier rather than as a warehouseman.  [495-498]

Tort and contract.  Writ in the Superior Court dated February 19, 1974.

The action was tried before *Lynch, J.*

*John J. McNaught, Jr.* (*Alice Olsen* with him) for the defendant.

*Charles Mark Furcolo* (*Thomas Burns* with him) for the plaintiff.

Dreben, J.  Armour & Co., Inc. (Armour), sought to recover from Rush Delivery Service, Inc. (Rush), a licensed common carrier, the value of a cargo of meat which had been stolen from a trailer.  Rush acknowledged at trial that if it had common carrier status at the time of the theft, it would be strictly liable for the loss without any showing of negligence.  *Norway Plains Co.* v. *Boston & Me. R.R.,* 1 Gray 263, 270 (1854).  *W.H. Blodget Co.* v. *New York Cent. R.R.,* 261 Mass. 365, 368 (1927).  49 U.S.C. § 20(11) (1976) (Carmack Amendment).  On the other hand, if Rush

had warehouseman status, it would only be liable for negligence. All claims of negligence were waived during the trial and it was agreed that Rush would only be liable if it were found to have common carrier status. The parties stipulated to the amount of damages. The jury found, after submission of the issue to them in the form of a single special question, that Rush had common carrier status, and a judgment was entered for Armour. Rush appeals from that judgment, arguing that its motions for a directed verdict should have been allowed and that the judge incorrectly instructed the jury. It also appeals from the denial of its motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. We affirm.

We state the facts in the light most favorable to the plaintiff, as is appropriate in considering a motion for a directed verdict and a motion for judgment notwithstanding the verdict. *Boyle* v. *Wenk,* 378 Mass. 592, 597-598 (1979). On April 30, 1973, Rush's driver picked up a trailer of meat, shipped by Armour from Mason City, Iowa, at the Penn Central yards in Allston for delivery to four different buyers. When the driver attempted to deliver the meat to the first consignee, the buyer said the delivery was too late in the day and refused to accept it. Armour had packed the trailer in such a way that it was necessary to unload the meat destined for the first buyer before any of the other orders could be off-loaded.

Rush's driver immediately sought instructions from his employer who, in turn, spoke to an Armour representative. Armour instructed Rush to deliver the shipment the next morning to the first consignee, and told Rush that it could leave the trailer in Armour's yard on Southampton Street, which was located near the place for delivery, provided that a "collar" be put on the fifth wheel of the trailer as a security measure, and provided that the trailer was Rush's "responsibility." Instructions were relayed to Rush's driver, who parked the trailer in Armour's yard around noontime, locked the fifth wheel with a pinlock and brought the key back to Rush's main office. No keys or documents were left

with Armour, and the driver had no instructions to inform anyone at Armour of the location of the trailer within the facility or that he was parking it there.  At about 2:00 P.M., Rush sent another employee to Armour's yard to check the security of the trailer.  The following morning when Rush's driver went to the Armour yard, the trailer was missing.

Rush argues that it lost its common carrier status when it parked the trailer in Armour's yard because the owner, Armour, had taken possession of the meat.  We disagree, as the jury could have found from the evidence set forth above that Armour did not take control or possession of the trailer but had merely allowed Rush to use its yard as a parking place for the trailer.

Rush also argues that although it originally was a common carrier, its status as a common carrier terminated and was never revived.  It points out that although it was a common carrier when it picked up the trailer at the Penn Central yards, once it had tendered delivery to the consignee and the consignee refused to accept the shipment, its status as common carrier terminated, and it became a warehouseman. *General Am. Transp. Corp.* v. *Indiana Harbor Belt R.R.,* 191 F.2d 865, 870 (7th Cir. 1951), cert. denied, 343 U.S. 905 (1952).  *In re Webb*, 8 Taunton 443, 449 (C.P. 1818).  The question, however, is whether it continued as a warehouseman or whether *its* status again shifted to that of common carrier.  Such a shift may occur under principles of long standing.  "[T]he same company, under one and the same contract, may be subject to distinct duties, for a failure in which they [*sic*] may be liable to different degrees of responsibility . . . ." *Norway Plains Co.* v. *Boston & Me. R.R.,* 1 Gray at 273.  See *American Ry. Exp. Co.* v. *Barnhart Drug Co.,* 22 S.W.2d 759 (Tex. Civ. App. 1929); *Lehigh Valley R.R.* v. *John Lysaght, Ltd.,* 271 F. 906, 909 (2d Cir.), appeal dismissed, 257 U.S. 613 (1921); *Rohr* v. *Logan,* 206 Pa. Super. Ct. 232, 235 (1965).  See generally Beale, The Beginning of Liability of a Carrier of Goods, 15 Yale L.J. 207 (1906); Sigmon, Miller's Law of Freight Loss and Damage Claims, c. 1 and c. 4, at 202-203 (3d ed. 1967).

We think there was sufficient evidence for the jury to find that Rush's common carrier status was revived, and we agree with the following conclusions of the trial judge which he set forth in his memorandum denying the defendant's motion for judgment notwithstanding the verdict: "[T]he jury could have found that, after rejection by the primary consignee, Rush had been instructed by Armour to make delivery of the shipment the next morning to that consignee; that Rush had expressly or impliedly agreed to do so; that Rush drove the trailer to the Southampton premises with the understanding and intention that it would make or continue the delivery the next morning and with the further understanding that in the interim the responsibility for the shipment remained with Rush until picked up the next morning."

Although Rush argues that the evidence does not support a finding that it agreed to assume responsibility for the shipment as a common carrier rather than as a warehouseman, the determination of the capacity in which the responsibility was accepted by Rush as well as "the precise period of time" when Rush's liability as a common carrier commenced were questions of fact for the jury. *Fitchburg & Worcester R.R.* v. *Hanna,* 6 Gray 539, 541 (1856).

The judge carefully and properly instructed the jury that, if they found that Rush had agreed to the resumption of common carrier status, they would also have to decide when that resumption took place.[1] On the basis of the evidence before them, it was open to the jury to find that Rush had agreed to accept responsibility as a common carrier at the time the arrangements to park the trailer in Armour's yard were made.

---

[1] The judge instructed the jury, "[Y]ou've got to decide, it seems to me, a further factual question when was that resumption of common carrier liability to take place? The time that this agreement was made, if you find it was made? Or was it to take place when Rush came to pick up the goods the next morning? Would Rush have agreed and did Rush agree that with the goods at Armour overnight that it would be responsible for common carrier strict liability during the night?"

Since the resumption of Rush's common carrier status was dependent on a finding of an agreement on the part of Rush to assume this responsibility, see *Judson* v. *Western R.R.*, 4 Allen 520, 521, 526-527 (1862); *Fitchburg & Worcester R.R.,* v. *Hanna,* 6 Gray at 542, we need not determine what Rush's status would be in the absence of such an agreement. Contrary to Rush's contention, the judge did not instruct the jury that Rush's agreement to deliver the meat the next day in itself revived Rush's common carrier status. We, therefore, need not consider the effect of the acceptance by Rush of instructions calling for delayed delivery. See *Barron* v. *Eldredge,* 100 Mass. 455, 458 (1868); Beale, 15 Yale L.J., at 216-217, and cases cited.

The contentions we have rejected were also advanced by Rush in support of its motion for a new trial. That motion was properly denied.

*Judgment affirmed.*

*Order denying motion for
new trial affirmed.*