NEW JERSEY FIDELITY AND PLATE GLASS INSURANCE COMPANY, RESPONDENT, v. LEHIGH VALLEY RAILROAD COMPANY, APPELLANT.

Argued June 25, 1918—Decided November 18, 1918.

1. Individuals or companies who maintain agencies which are dangerous to human life, are under a duty to exercise a very high degree of care for the safety of those who may be thereby exposed to danger. High degree of care denotes a degree of care commensurate with the risk of danger; and whether, in a given case, a defendant has exercised that degree of care commensurate with the risk of danger arising from the accumulation of a vast quantity of high explosives upon its premises, in cars which stood in close proximity to each other, was clearly a jury question.

2. Where certain rules and regulations prescribed by acts of congress, and by the interstate commerce commission, covering the carrying and transportation of explosives are set forth by defendant's answer to the complaint, and also, in part, by answers to interrogatories, propounded to it, such rules and regulations are evidence in the cause, without formal proof thereof.

On appeal from the Supreme Court.

For the appellant, *Lindley M. Garrison* and *Gilbert Collins* (*E. H. Boles, R. W. Barrett* and *George S. Hobart,* of counsel, on the brief).

For the respondent, *Edwin F. Smith* and *Maximilian M. Stallman.*

The opinion of the court was delivered by

KALISCH, J.   Stripped of all technical matters which do not appear to affect materially the merits of the case, the main legal questions raised by the appellant concern the application of the ordinary legal rules pertaining to cases of negligence of the kind, as here.   The contention of appellant's counsel. is, that the trial judge erred, in failing to properly apply these legal rules, in denying appellant's motion for a nonsuit, and for a direction of a verdict in its favor and in his charge to the jury.

The respondent, plaintiff in the court below, obtained a judgment for the sum of $23,687.37, as compensation for the damages alleged to have been sustained by it, in replacing certain glass, which the plaintiff was under a legal duty to replace, and which was broken in various buildings located in Jersey City and neighboring cities, as the result of an explosion at one of the Jersey City terminals of the defendant's along the Hudson river at an early hour in the morning of July, 1916.

The defendant introduced no evidence.   The undisputed facts in the case are, that at the time of the explosion the defendant had in its possession and gathered together on its pier, and for several days prior thereto, thirty-eight cars of an average holding capacity of not less than sixty thousand pounds of explosives.   These cars were loaded to their full capacity with this extra-hazardous material, and in the aggregate contained more than two million pounds of explosives. Eleven of these cars contained six hundred thousand pounds of trinitrotuluol, known as TNT, a very high and dangerous

explosive. The effect of the explosion was the loss of human lives and widespread destruction and devastation of property. Where the cars had been standing the force of the explosion produced a crater which was three hundred and seventy-five feet long, two hundred and twenty feet wide, and ten to twelve feet in depth.

The proof tends to show that the origin of the explosion was a fire, which started at or near the ammunition cars, and was first discovered by a watchman, in the employ of a detective agency, who notified an employe of the defendant; that the defendant had in its employ four or five watchmen who had manifold duties to perform on the inside of the various warehouses and storage rooms of the defendant company, to care for a grain elevator and the machinery around it, to look after the boilers in the various buildings and to keep the fires going and the steam up; to look after a crane on the premises and the machinery around it, &c.

There was also testimony tending to establish that the piers and yard were approachable from the river and land sides, and that on occasions persons would come from the street and from the boats and gather and sit upon the dock until driven off by the watchman.

Moreover, it appears that this vast quantity of high explosives was stored in proximity to the habitations and businesses of millions of human beings whose lives and properties were thereby exposed to a risk of unusual danger.

The first count of the plaintiff's complaint was predicated on a nuisance, but that was eliminated by the trial judge, and therefore need not be considered.

The second count alleged a failure to exercise proper care in watching and guarding explosives, extinguishing and controlling fires, &c.; in employing a sufficient number of watchmen and guards; in furnishing sufficient fire fighting apparatus; in storing, handling and disposing of the explosives; in keeping in repair sufficient means of communication with the fire and police departments; and in giving notice to the fire department at once.

Taking up for consideration, first, the question whether the trial judge erred in refusing to grant a nonsuit or to direct a verdict for the defendant, our conclusion is that he did not.

The legal rule as to the degree of care resting upon individuals or companies who maintain agencies which are dangerous to human life, is well expressed by Chief Justice Magie, in *Newark Electric Light Co.* v. *McGilvery,* 62 *N. J. L.* 451, where he says (at *p.* 454) : "Such companies using in business wires to carry a subtle and invisible power highly dangerous to life, must, although authorized to stretch such wires along poles in public highways, exercise a very high degree of care for the safety of those who may be thereby exposed to danger."

By consensus of opinion of text-writers, on the law of negligence, and by judicial decisions, high degree of care denotes no more than degree of care commensurate with the risk of danger.

Whether the defendant had exercised that degree of care commensurate with the risk of danger arising from the accumulation of the vast quantity of high explosives upon its premises, in cars which stood in close proximity to each other, was clearly a jury question.

Under the pleadings and proof in the cause the jury was warranted in taking into consideration the exposed condition of the premises where the cars containing the explosives stood, the possibility of their being tampered with or set on fire by intruders, or through the carelessness of workmen employed by the defendant, in and about the premises; and might properly have found that the number of watchmen employed by the defendant to guard this great quantity of high explosives against such happenings was inadequate; or that the watchmen had been negligent in the performance of their duties in failing to discover the fire before it was too late to prevent the disaster which followed; or that the defendant was negligent in failing to provide adequate apparatus to fight the fire; or in failing to give notice of the fire as soon as discovered to the fire department.

It is wholly of no importance whether or not the pleader accurately stated the legal duties, devolving upon the defendant, arising from the facts averred in the complaint. Chief Justice Beasley, in *Breese* v. *Trenton Horse Railroad Co.,* 52 *N. J. L.* 250 (at *p.* 251), quotes with approval the legal rule appropriate thereto, as laid down by Addison in his work on Torts: "The decisions, observes Lord Campbell, show that the allegation of duty in a declaration is in all cases immaterial, and ought never to be introduced, for, if the particular facts set forth raise the duty, the allegation is unnecessary, and, if they do not, it will be unavailing. If the particular facts stated in the declaration do not raise the duty, it cannot be established by other facts not stated. The declaration, therefore, must stand or fall by the facts stated. Negligence creates no cause of action unless it expresses or establishes some breach of duty. 2 *Add. Torts.,* ¶ 1338."

The complaint in this case tested by this legal rule is sufficient. It sets out facts which upon proof thereof laid a proper basis for a finding by a jury that the defendant was negligent.

The chief insistence of the appellant is that the trial judge did not permit the jury to find negligence on any theory properly inferable from the facts set forth in the complaint, but that the jury was permitted to find negligence on a theory arising out of matters not set forth in the complaint. To state the appellant's proposition concretely, it is that the issue, submitted to the jury, and upon which its verdict was based, was not presented by the pleadings. In support of this assertion, counsel of appellant point to the fact that, under a regulation of the interstate commerce commission, a common carrier is required to place, on a car containing explosives, a placard which shall contain the word "Explosives," printed in red, and, amongst other things, this, "Keep fire away," also to be printed in red ink. And that another regulation required such carrier having in custody such explosives to guard against unauthorized persons having access to such explosives. That with these regulations in view, the trial judge charged the jury, as follows: "Now, gentlemen, the

regulations of the interstate commerce commission, as I have said, are controlling and exclusively controlling upon this subject; and in respect to matters where the regulations have been adopted, I charge you that the duty of the company was, in the transportation of explosives, to exercise care commensurate with the risk, and that the company will be liable for damages resulting from a failure to exercise such care."

It is to be observed that the trial judge, despite the regulations of the interstate commerce commission, imposed no greater burden upon the defendant, as to the measure of care to be exercised by it, in respect to the custody of the explosives, than is required at common law and by the settled law of this state.

The assumption of appellant's counsel that an issue was injected into the case not warranted by the pleadings, plainly arises from confounding the issue of negligence presented by the pleadings, with the character of the evidence adduced by the plaintiff to establish such negligence. The plaintiff, in its complaint, did not make the regulations of the interstate commission a basis for its right of recovery against the defendant, but made use of such regulations in the same manner as is done in cases of negligence, where penal ordinances or statutes are introduced in evidence, which, though in themselves, cannot be made the foundation of a civil action, nevertheless, may be used as tending, in conjunction with the other evidence in the cause, to establish the negligence charged in the complaint. *Evers* v. *Davis,* 86 *N. J. L.* 196. Although the learned judge adverted to the regulations and their effect, he did not instruct the jury that the defendant could be convicted of negligence and must respond in damages, if any of the regulations had been violated by it, but, on the contrary, expressly instructed the jury that the defendant's liability, to respond in damages to the plaintiff, arose, if, in the transportation of explosives, it failed to exercise care commensurate with the risk of danger.

But, it is further objected that the regulations were not properly before the court, in that they were not proven to be regulations of the interstate commerce commission and not

introduced in evidence, and, therefore, were not proper matters to be considered by the jury on the question of the alleged negligence of the defendant.

A reference to the defendant's amended answer to the plaintiff's complaint shows that paragraphs 2 and 3 of the second defence in the answer to the second count of the plaintiff's complaint, in substance, states that it, the defendant, carried, conveyed, transported and held the explosives in accordance with and pursuant to the act of congress of the United States entitled "An act to promote the safe transportation in interstate commerce of explosives and other dangerous articles and to provide penalties for its violation," approved March 4th, 1909, and the act of said congress entitled "An act to regulate commerce," as amended June 18th, 1910, and the regulations prescribed by the interstate commerce commission by authority of said acts. Moreover, it appears that the defendant in interrogatories set forth certain placards displayed on the various cars, which it said were those required by paragraph 1666 of the rules of the interstate commerce commission; and it was these placards of which the trial judge said he would take judicial notice.

Upon what legal theory the court could properly take judicial notice of these placards or rules is not made clear, unless he meant by "judicial notice" that since the defendant had referred to them in its answer to the complaint and had stated the contents of the placards in the answer to the interrogatories and had said that they were in conformity with the regulations, he would take notice of them. The defendant having given testimony relating to these placards and regulations, there appears to be no good reason why the general rule applicable to such a situation should not prevail and make these placards and regulations evidence in the cause without formal proof. There was, therefore, no inpropriety in permitting these rules to be taken into consideration, in conjunction with the other evidence in the cause.

The regulation to "keep fire away" cast no greater burden upon the defendant than that imposed upon an individual or carrier who in the midst of a densely populated community

stores vast quantities of highly explosive materials. But even if the regulation could be construed in the sense that it imposed a higher degree of care than was required at common law, the trial judge did not adopt any such construction, but, on the contrary, instructed the jury that the care required was care commensurate with the danger of the risk; and this was no more than stating the common law rule pertaining to the circumstances of the case.

It is plain, from the judge's charge, that with the regulations considered, no greater burden was imposed upon the defendant, in respect to the measure of care to be exercised by it, in the handling and care of the high explosives, than if the regulations were entirely out of the case.

The grounds of appeal resting upon the assertions that there was no evidence that the plaintiff was damaged by the explosion of explosives which were under the defendant's control, and that there was no evidence that the fire on the defendant's premises was caused by or attributable to any negligence of the defendant, are wholly without merit.

The judgment is affirmed, with costs.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ. 13.

*For reversal*—None.