FREDERICK H. HOWELL ET AL., RESPONDENTS, v. LE-
HIGH VALLEY RAILROAD COMPANY, A CORPORA-
TION, APPELLANT.

Argued November 25, 1919—Decided March 1, 1920.

1. The federal statute, providing for the safe transportation in in-
terstate commerce of explosives and other dangerous articles, and
the regulations formulated by the interstate commerce commis-
sion thereunder, do not attempt to fix the entire measure or de-
gree of care to be exercised by a common carrier in the care and
custody of high explosives and were not intended to absolve
transportation companies from care commensurate with the risk
of danger involved.
2. Where, in a tort action, the damages consisted of property de-
stroyed which had a market value and therefore were not uncer-
tain—there being a fixed standard by which such damages were
readily ascertainable—the market value of the property at the
time of its destruction, interest is properly allowable.

On appeal from the Supreme Court.

For the appellant, *Lindley M. Garrison,* *Gilbert Collins*
and *George Hobart* (*Edgar H. Boles* and *Richard Barrett* (of
the New York bar) on the brief).

For the respondent, *Alfred F. Skinner* (*Frederick B.
Campbell, Paul C. Whipp* and *Thomas R. Rutter* (of the New
York bar) on the brief).

The opinion of the court was delivered by

KALISCH, J. This case in its salient features is like Fi-
delity and Plate Glass Insurance Company against this de-
fendant, reported in 92 *N. J. L.* 467.

The facts of that case, which gave rise to the questions con-
cerning the alleged negligence of the defendant, are prac-
tically the same here, and, therefore, need not be reiterated.
There the main questions were whether the facts which ap-
peared from the plaintiff's proof tended to establish negligence

of the defendant, and whether the correct legal principles governing those facts were properly stated by the court to the jury for its guidance, both of which questions we answered in the affirmative.

Wherein the present case differs from the one cited is in that, here, the defendant for the first time introduced testimony, in its behalf, tending to controvert the plaintiff's *prima facie* case, but it is obvious from an examination of this new testimony that it does not in legal effect constitute a complete bar to the plaintiff's right of recovery, and, at most, only raised issues of fact which were for the consideration and decision of a jury. Thus, as instances illustrative of this comment, were the questions whether the fire and explosions were due to incendiarism or to spontaneous combustion, or whether the fire and explosion had its origin in a schooner loaded with explosive substances, which vessel, it was alleged was unlawfully moored to the pier of the defendant without its knowledge or consent, or whether the explosion on the schooner preceded the explosion on land.

Counsel of appellant argues that the court below erred to the prejudice of the defendant in stating to the jury that the measure of duty which the defendant was legally bound to exercise in the care of these highly dangerous explosives was care commensurate with the risk of danger. Their insistence is, that the common law was not applicable to the case in hand, for the reason that the common law rule respecting negligence in this class of cases had been superseded by the federal statute of March 4th, 1909 (*U. S. Comp. Stat.*, 1913, § 10403), and the rules of the interstate commerce commission authorized by the act.

It is conceded in the brief of counsel of appellant that this court ruled adversely to their contention in the case cited, but they make the claim that they are not barred from raising this point in the present case for the reason that it differs from the former, in that there the regulations were not pleaded or relied on by the plaintiffs, whereas here they were pleaded and relied on.

While it is true that the regulations of the interstate commerce commission were not specifically pleaded and were not formally introduced in evidence, they, nevertheless, came into the case through the answer filed by the defendant referring to the interstate commerce regulations, as authorized under the federal statute of 1909, and by defendant's answers made to interrogatories relating to these regulations, all of which were made the subject of debate, as to their legal effect in that case, at the trial, and on appeal before us.

The federal statute which is invoked and on which the defendant's counsel have rested their contention is entitled "An act to promote the safe transportation in interstate commerce of explosives and other dangerous articles and to provide penalties for its violation."

Section 233 of that act conferred authority on the interstate commerce commission to formulate regulations for the safe transportation of explosives which should be binding upon all common carriers engaged in interstate or foreign commerce which transport explosives by land.

In addition to what has been said by us in the former case, it is clear from a plain reading of the statute, and the regulations relating to the subject-matter of controversy, that neither the statute nor the regulations attempts or attempt to fix the entire measure or degree of care to be exercised by a common carrier in the care and custody of high explosives.

It seems to us that the regulations were formulated to govern the packers and shippers of high explosives and to govern the transportation companies and their servants in the handling and transportation of such dangerous combustibles, and it is to be fairly gathered from the very nature of the regulations that they were not intended to absolve transportation companies from care commensurate with the risk of danger which might arise from concentrating a large quantity of highly explosive matter in close proximity to densely populated cities, and at a terminal exposed to and unprotected against intruders and incendiaries, and without proper facilities to promptly meet the outbreak of a fire or any other danger reasonably to be apprehended.

That the regulations contemplate a degree of care to be used commensurate with the risk of danger appears from the regulations themselves. Thus section 1643, among other things, provides that careful men must be chosen to handle explosives; that suitable provision must be made for the safe storage of explosives, and all possible precautions must be taken against fire; that if a shipment of explosives is not removed within forty-eight hours after notice of arrival at destination, it must be disposed of by return to the shipper, or by storage at the expense of the owner, or by sale, or when necessary to safety by destruction under supervision of a competent person; that unauthorized persons must not have access to explosives or other dangerous articles at any time while such articles are in the custody of the carrier. And, section 1689, speaking of cars containing explosives, expressly provides: "They must be so placed in yards or on sidings that they will be subject to as little handling as possible, and be removed from all danger of fire."

The record shows that the learned trial judge read to the jury the specifications of negligence contained in the complaint, and supplemented this by instructing the jury that the burden rested upon the plaintiffs to make out by the greater weight of the evidence that the negligence charged in the written complaint existed and was the proximate cause of the loss and then said: "That does not mean that they are obliged to make out all of those specifications of negligence which I have read to you, for if they make out any one of those specifications of negligence, or two or more of them, by the greater weight of the evidence and show by the greater weight of the evidence that one specification, or two or more specifications of negligence were the proximate cause of the loss and that they existed on part of the defendant company, that would give them a right of recovery," &c. To this statement of the rule of law counsel of defendant excepted. We perceive no error in the instruction. It is obvious that the court limited the finding by the jury of the defendant's negligence to such specifications of negligence as were the proximate cause of loss and supported by proof, and, hence, he impliedly ex-

cluded any specification contained in the complaint and read to the jury which was not the proximate cause of the loss and was not supported by the greater weight of the evidence.

It is urged in the brief of counsel of appellants that the judgment in favor of the insurance companies as plaintiffs should be reversed because they were not entitled to subrogation unless it appeared at or before the payment of the loss claimed to the insured that the fire was caused by the act or neglect of some third person, and that no proof of any such claim was made.

The provision of the policy which is germane to this contention is: "If this company shall claim that the fire was caused by the act or neglect of any person or corporation, private or municipal, this company shall, on payment of the loss, be subrogated to the extent of such payment to all right of recovery by the insured for the loss resulting therefrom, and such right shall be assigned to this company by the insured on receiving such payment."

It does not appear that an assignment of such right was made by the insured to the insurers. It is argued that a failure to comply with this provision of the policy by the insurers constitutes a waiver, and in legal effect precludes the insurers from maintaining their action. The case of *Fire Association of Philadelphia* v. *Schellenger,* 84 *N. J. Eq.* 464, is cited as supporting this contention. That case differs in a material respect from the present one. There, there was a suit between an insurer and an insured, arising out of a policy of insurance, containing a similar provision, as above set forth, and under the facts of that case, there appeared by the conduct of the parties that there was a waiver of the provision by the insurer, and it was held by this court that such waiver was a complete defence in bar of suit. But here the action is not between the parties to the policies. The action is by the insurers with whom the insured is acting in co-operation, as one of the plaintiffs, to recover the entire loss sustained by the insured, from the defendant, and it cannot be of any possible concern to the defendant, a tort-feasor who, at any rate, was under a legal obligation to pay the loss to the insured, as

to what the contractual relation and legal status between the insured and insurer were. The fact that the insured was acting in concert with the plaintiffs in bringing the action was a demonstrative act on its part that there was no waiver. Even if the defendant could have properly pleaded a waiver, which is a defence an insured might set up under certain circumstances, nevertheless, in the present case, the defendant did not do so, and, therefore, it cannot take advantage of such a defence now, and especially not after the entire case has been tried out upon its merits.

Lastly, it is claimed that the trial judge erred in refusing to charge the following request: "The jury is not at liberty to allow the plaintiff, or any of them, any interest in respect of any sum found to be due to them, or any of them."

The fire destroyed plaintiffs' sugar stored in warehouses. The quantity of sugar destroyed was not in dispute. At any rate it was easily ascertainable by simple calculation. The property had a certain market value before and at the time of the fire and its destruction. The market value was five and one-eighth cents a pound, and, therefore, the exact loss was ascertainable by mere computation. To illustrate: If a quantity of that sugar had been sold on that day to a customer, but without a price fixed therefor, there can be no doubt that in an action to recover for the value of the sugar, even though the price and quantity delivered be disputed by the defendant, the plaintiff would, nevertheless, be entitled to recover its market value at the time the sugar was sold and found to have been delivered, and unless sold on credit would be entitled to interest from the date of the shipment. It is to be observed that in such a case, as was done in the present, not only the value of the sugar would have to be ascertained by reference to established market values, but also the quantity actually delivered, in order to ascertain the amount due to the plaintiff. There can, therefore, be no rational basis on which the allowance of interest may be made in the one case and not in the other.

The ground upon which a recovery of interest will be disallowed is well stated by Mr. Justice Trenchard, in *Philbrick*

v. *Mundy*, 93 *N. J. L.* 43 (at *p.* 44), where, speaking for the Supreme Court, in commenting upon *Speer* v. *Van Orden*, 3 *Id.* 232, he says: "That principle is applicable to an action of tort, such as the present, where the damages are an uncertain quantity, depending on no fixed standard, and cannot be made certain except by verdict."

In the case *sub judice* the damages consisted of property destroyed which had a market value and therefore were not uncertain—there being a fixed standard by which such damages were readily ascertainable—the market value of the property at the time of its destruction.

An examination of the other grounds of appeal relied on and argued before us proves them to be without merit.

Judgment is affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, ACKERSON, JJ. 15.