**FIDELITY & DEPOSIT CO. OF MARYLAND et al. v. LEHIGH VALLEY R. CO.**

(Circuit Court of Appeals, Third Circuit. September 17, 1921.)

Nos. 2670 to 2682.

1. **Explosives ☞8—Instruction properly refused as imposing on carrier of explosives liability as insurer against accidents.**

   A requested instruction that a carrier of explosives, though complying with the regulations of the Interstate Commerce Commission, was under the duty to provide such additional means or measures of care "as might be necessary to prevent a fire or explosion" held properly refused, as imposing on the carrier liability as an insurer against accidents.

2. **Explosives ☞8—Regulation requiring storage of explosives held not to apply to carload lots awaiting unloading for transshipment.**

   Section 1643 of the regulations of the Interstate Commerce Commission for the transportation of explosives providing that "suitable provision must be made, outside the station when practicable, for the safe storage of explosives," held not to apply to explosives in carload lots which had reached their destination and were awaiting unloading for transshipment on vessels.

3. **Explosives ☞8—Duty of care in transportation of explosives.**

   In actions against a railroad company to recover damages caused by an explosion of munitions, resulting from fire which reached the munitions

while in cars standing in defendant's terminal yards in a city awaiting transfer to vessels, instructions that defendant was under no legal duty to maintain fire hydrants or provide men and equipment to fight fire in its yards in addition to those furnished by the city *held* not erroneous, when clearly qualified by a statement of the rule that defendant's duty with reference to the custody of explosives was to exercise care commensurate with the risk of danger.

4. Appeal and error ⟨⟩337(2)—Divergent verdicts of different juries do not evidence error in instructions.

The fact that different verdicts have been rendered by different juries on the same issues is not persuasive of erroneous instructions on the law, but rather tends to show that the issues were, because of conflicting inferences which might be drawn from the facts, peculiarly within the province of juries to determine, and that, having determined them, their verdicts must stand, in the absence of errors of law.

In Error to the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Actions at law by the Fidelity & Deposit Company of Maryland and twelve other plaintiffs against the Lehigh Valley Railroad Company, consolidated for trial. Judgments for defendant, and plaintiffs bring error. Affirmed.

Max M. Stallman, of Newark, N. J., James D. Carpenter, of Jersey City, N. J., Theodore McCurdy Marsh, of Newark, N. J., and Edwin F. Smith, of Jersey City, N. J., for plaintiffs in error.

George S. Hobart, of Newark, N. J., and Edgar H. Boles, Richard W. Barrett, and Nash Rockwood, all of New York City, for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. The Black Tom Terminal of the Lehigh Valley Railroad Company extends easterly on a peninsula from the New Jersey side of the Upper Bay of New York. It comprises, roughly speaking, a large number of warehouses situate on one side and a railroad yard surrounded by sea walls and bulkheads, with connecting piers and slips, on the other three sides. The yard is about eleven acres in extent and has twenty-six tracks. During the war the defendant carrier transported explosives to the seaboard in great quantities, bringing them to the yard of the Black Tom Terminal where they were unloaded and transferred to ships for export.

On the night of July 29, 1916, the defendant had in its yard eight cars of trinitrotoluol, ten or twelve cars of loaded shells, and a number of cars of other munitions, comprising thirty-three cars in all. Shortly after midnight, one of several detectives employed by the British Government stationed at one of the piers discovered a fire about the size of a man's hat at the side of one of the cars loaded with shells. Raising a cry of fire, he and his companions fled. After turning in an alarm to the Jersey City Fire Department, the employees of the defendant employed about the terminal retired to points of safety. The fire increased steadily, shells bursting and shrapnel scattering in all directions. When the fire engines arrived, about one half hour after the

fire was discovered, the danger was so great that the fire chief withheld his men from the fire. There followed two great explosions, destroying much property nearby and shattering plate glass of doors and windows in New York City and Jersey City.

Many suits for damages were brought in state and federal courts. In the instant actions, separately instituted but later consolidated and tried together, the complainants charged negligence to the defendant in the care of the explosives in its possession. The main question at the trial was the measure of the defendant's duty in the circumstances. The negligence charged was two-fold: First, that the defendant failed in its duty to exercise a high degree of care to prevent fires and detonations whereby munitions in its custody were exploded, specifying in this regard its failure to provide adequate fire-fighting apparatus; to employ a sufficient number of watchmen; to instruct them in the manner of fighting fire among explosives; and lastly, the refusal of the watchmen to make efforts to extinguish the fire after it had been discovered; and second, that the defendant failed in its duty to observe regulations of the Interstate Commerce Commission promulgated pursuant to the Acts of Congress of March 4, 1909, and June 18, 1910, 36 Stat. 539, c. 309 (Criminal Code, § 233 et seq., 35 Stat. 1134 [Comp. St. § 10403]), prescribing the care which a carrier should exercise in the transportation and storage of explosives.

The defense likewise was two-fold: First, that the defendant had complied with the regulations of the Interstate Commerce Commission as to transportation of explosives and in so doing had discharged its full duty; and second, that, in any event, it had exercised care and caution commensurate with the risk. The court ruled against the defense of complete performance of the defendant's duty by compliance with the cited regulations and laid down the rule that the defendant's duty with reference to the custody of explosives was the exercise of care commensurate with the risk of the danger.

The evidence on which the plaintiffs relied for recovery under the rule as charged was, in substance, that in the trackage part of the yard as distinguished from the warehouse part there were no fire hydrants, hose stations, or fire-fighting apparatus; that there were but four watchmen and no fire-fighting guards assigned to the yard; that the defendant had given no instructions to even this small number of yard employees as to how they should fight fire among explosives; and that these employees did nothing to extinguish the fire.

The defendant, in addition to showing compliance with the regulations of the Interstate Commerce Commission, produced evidence tending to show that, on the night of the fire, there was a 100,000 gallon gravity tank filled with water located between the warehouses and yard; that there was an electric pump with a capacity of 1,500 gallons per minute a short distance from the tank; that there were 24 three-way fire hydrants and 10 two-way hydrants located at various places upon the premises (not among the tracks because of its impracticability); and that there were 3,600 feet of standard fire hose on ten hose carts, a quantity sufficient to reach any part of the yard where the cars were, if attached to the nearest hydrants; and that the reason the men did

not fight the fire was because of fear in the face of constant shell explosions.

On this conflicting evidence it is obvious that juries of different minds might arrive at opposite conclusions. And this is what happened. The jury in the instant case, resolving the evidence in favor of the defendant, rendered verdicts accordingly. From the judgments entered the plaintiffs sued out these writs of error, bringing here for review questions which have to do more with the manner in which the court charged the law than with the law itself.

[1] The first matter pressed as error was the court's refusal to grant the plaintiffs' request to instruct the jury as follows:

"In so far as the regulations (of the Interstate Commerce Commission respecting a carrier's conduct in transporting high explosives) specified certain duties, the regulations are controlling, but if the circumstances were such as to reasonably require measures of care or protection not mentioned in the regulations, then it was the duty of the defendant to use, or employ, or provide such additional means or measures of care *as might be necessary to prevent a fire or explosion.*"

One of the special defenses which the defendant made at the trial was that the regulations of the Interstate Commerce Commission constituted the sole measure of its duty, and that, having complied with them, it was not required by law to do anything more. The trial court, in interpreting these regulations, regarded them as exclusive whenever they applied, refused to limit the duty of the defendant in the exercise of care to the matters therein prescribed, and broadly charged the defendant with the duty, as required at common law and by the settled law of the state, of exercising care commensurate with the risk of danger, the degree of care being high when the risk is great. New Jersey Fidelity & Plate Glass Insurance Co. v. Lehigh Valley Railroad Co., 92 N. J. Law, 467, 105 Atl. 206; Lehigh Valley Railroad Co. v. Allied Machinery Co. of America (C. C. A.) 271 Fed. 900.

The trouble with the instruction which the plaintiffs requested and the court refused is that it did not lay down, as a rule of duty for the defendant, the measure of care which it should exercise with regard to the risk, but imposed upon the defendant an absolute duty to provide "means and measures of care," in addition to those prescribed by the regulations of the Interstate Commerce Commission, "as might be necessary to prevent a fire or explosion."

The distinction between the true rule of law and the request as framed is neither trivial nor technical; it is quite substantial. It was the subject of elaborate consideration by the Court of Errors and Appeals of New Jersey in Mason v. Erie R. R. Co., 75 N. J. Law, 521, 68 Atl. 105. The distinction turns on the difference between the duty of a carrier to exercise reasonable care in providing facilities of protection in transportation as against a carrier's duty absolutely to insure transportation against accident. In other words, it marks the difference between a carrier's liability for negligence and its guaranty of safe carriage. The former inhered in the implied duty owed by the defendant to the plaintiffs, whether as carrier or warehouseman; the latter did not so arise and was not within the undertaking of the defendant.

Foley v. Brunswick Traction Co., 66 N. J. Law, 340, 50 Atl. 637. Without quoting at length from the elaborate and carefully balanced charge of the learned trial judge, we are of opinion that, on this question, the plaintiffs received all they were entitled to, and that, in consequence, they suffered from no error.

[2] Section 1643 of the regulations of the Interstate Commerce Commission provides that—

"Suitable provision must be made, outside the station when practicable, for the safe storage of explosives, and every effort possible must be made to reduce the time of this storage."

The plaintiffs charge error to the court in granting the defendant's request for an instruction to the jury that this paragraph did not apply to it "under the evidence in this case, and therefore no verdict against the defendant can be based upon any alleged violation of such provision." The evidence was that all explosives were in carload lots. They had arrived at their destination and were awaiting unloading for transshipment. No move had been made to unload or to store them. The section of the regulations of the Interstate Commerce Commission next preceding the one quoted deals in detail with the method of handling explosives at stations and transferring them to and from cars. We think the court committed no error in reading these sections together and in holding that section 1643, however interpreted in other respects, relates to the subject matter of section 1642, and that, in consequence, its provision *for storage* does not extend to explosives in carload lots.

The assignments of error, which together specify error in the court's charge on the issues of the defendant's negligence, deal with two matters: First, the fear and failure of its employees to fight the fire; and, second, the absence of facilities with which to fight it, even if they had been so minded. As to the first, it is clear that the charge of the court was correct and adequate. It was the usual instruction, giving, as the test of due care, the conduct of a reasonably prudent and cautious man under given circumstances, affected, as here, with conditions of emergency involving appalling danger which tended to deprive him of an opportunity for deliberate thought and called upon him for the exercise of courage which he might or might not possess.

[3] On the phase of negligence for lack of fire-fighting facilities, the defendant requested that the jury be instructed as follows:

"There was no legal duty resting upon the defendant in respect to its terminal at Black Tom to furnish fire hydrants in addition to those furnished by the City of Jersey City, the said terminal being within the limits of said municipality."

The court gave the instruction but with the following modification:

"I so charge you, gentlemen, but there was a duty to use the care commensurate with the risk. You gentlemen must determine what that duty was, and what the care was, and what the risk was."

The defendant also made this request:

"There was no legal duty resting upon the defendant in respect to its terminal at Black Tom to furnish men and equipment to extinguish fires in addition to the men and equipment of the municipality of Jersey City, within the limits of which the said Black Tom Terminal is."

The court gave this instruction also but with the following modification:

"And what I have said with respect to the preceding request to charge I say to you now, that it is solely a question for you gentlemen to determine whether under all the circumstances of the case the defendant company used due care to prevent the occurrence and whether this occurrence, if you find it was caused by neglect, was the proximate cause of the injury to the plaintiffs in this case."

The substance of the error which the plaintiffs specify in these instructions is that, in so far as they were framed in the language of the defendant's requests, they withdrew from the jury the questions of negligence raised by the pleadings on the defendant's duty to furnish adequate fire protection both in men and equipment, and in so far as the requested instructions were modified by the court in giving them to the jury by stating broadly in each instance the defendant's duty to use care commensurate with the risk, the original error was not cured. If negligence there was, it must have been based on some legal duty which the defendant owed the plaintiffs to furnish fire hydrants and men in addition to the equipment and men furnished by the City of Jersey City, within whose limits its terminal was situated. Neither the attention of the court below, nor the attention of this court, has been directed to any law, prescribed by statute or ordinance, imposing such duty upon the defendant. A duty of this character may have existed, but if it did it was only because it arose from the rule requiring of the defendant care commensurate with the danger. The court repeatedly stated this rule to the jury, and left the jury to determine under the rule just what care with reference to facilities and men with which to fight fire was required of the defendant in the circumstances. This is not an instance where a court, having given instructions affected by error, sought to cure the error by later statements in the charge. It is an instance where the court charged there was no legal duty, in the sense of a duty prescribed by a given law, to do a specific thing. But the court made it clear in the very next sentence following each instruction, as well as in the body of the charge, that the duty which the law imposed upon the defendant was a care commensurate with the risk, reckoned in men and fire-fighting facilities, whatever they might be. We find no error in these instructions. On the contrary we find that in his statements of the rule, repeatedly made and differently phrased, the learned trial judge left the issues entirely with the jury, and in so doing he carefully and amply protected the plaintiffs' rights under the rule.

[4] In disposing of these writs it may be pertinent to state that the fact that different verdicts have been rendered by other juries on the same issues as were here submitted is not persuasive of erroneous instructions on the law given by the trial court in this case—or, indeed, in the other cases. These differing views of several juries on the same facts tend rather to convince one that the issues were, because of conflicting inferences to be drawn from the facts, peculiarly within the province of juries to determine, and that, having determined them, their verdicts must, in the absence of error of law, stand. New Jersey

Fidelity & Plate Glass Insurance Co. v. L. V. R. R. Co., 92 N. J. Law, 467, 105 Atl. 206; Id., 249 U. S. 600, 39 Sup. Ct. 258, 63 L. Ed. 796; Howell v. L. V. R. R. Co. (N. J.) 109 Atl. 309; Id., 253 U. S. 482, 40 Sup. Ct. 482, 64 L. Ed. 1024; Royal Indemnity Co. v. L. V. R. R. Co. (N. J.) 109 Atl. 745; Id., 253 U. S. 483, 40 Sup. Ct. 482, 64 L. Ed. 1024; Metropolitan Casualty Insurance Co. v. L. V. R. R. Co. (N. J.) 109 Atl. 743; Lehigh Valley Railroad Co. v. Allied Machinery Co. (C. C. A.) 271 Fed. 900.

We find no error in the trial below, and therefore direct that the judgments below be affirmed.