Leonard S. SMITH

v.

PENNSYLVANIA–READING SEA-SHORE LINES

and

E. I. DuPont De Nemours & Co., Inc.

Civ. A. No. 70–1516.

United States District Court,
E. D. Pennsylvania.

March 15, 1973.

Cornelius C. O'Brien, Jr., Philadelphia, Pa., for plaintiff.

Denis V. Brenan, Philadelphia, Pa. (Penna. Reading Seashore Lines), K. Robert Conrad, Philadelphia, Pa. (DuPont), for defendants.

## OPINION AND ORDER

GORBEY, District Judge.

Before the court are defendants' post-trial motions.

Plaintiff, a brakeman, brought suit against his employer, Pennsylvania-Reading Seashore Lines (PRSL), under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq., and against E. I. DuPont deNemours & Co., Inc. (DuPont) alleging common law negligence and basing jurisdiction on diversity of citizenship and amount in controversy. Plaintiff sought damages for injuries he allegedly sustained resulting from a series of explosions of smokeless powder while he was resting in a bunkhouse at the DuPont plant located at Carney's Point, New Jersey.

At a bifurcated trial lasting eight days, the jury responding to special interrogatories in accordance with rule 49(a) Fed.R.Civ.Proc. resolved liability against both defendants.[1] Subsequently, the jury assessed damages in the amount of $110,000.00.

Defendant DuPont has moved for judgment N.O.V. and alternatively for a new trial. Defendant PRSL has filed and briefed the following motions:

(a) Judgment N.O.V. in its favor against plaintiff;

(b) New trial; and

(c) Cross-claim against DuPont for indemnification.

Both defendants raised numerous issues in the briefs in support of their post-trial motions. Since PRSL and DuPont take different positions on the issues in the case, after a recitation of the facts, their motions will be discussed separately, except where they relate to their liability *inter se.*

---

1. "1. Do you find by a fair preponderance of the evidence that the defendant railroad was negligent?

Answer "Yes" or "No"

ANSWER Yes

(If your answer is "Yes" go on to answer question 2; if your answer is "No" go on to question 3.)

2. Do you find by a fair preponderance of the evidence that the railroad's negligence caused plaintiff's injuries in whole *or in part*?

Answer "Yes" or "No"

ANSWER Yes

(Go on to answer question 3.)

3. Do you find by a fair preponderance of the evidence that the defendant DuPont was negligent?

Answer "Yes" or "No"

ANSWER Yes

(If your answer is "Yes", go on to answer question 4. If your answer is "No", do not answer question 4.)

4. Do you find by a fair preponderance of the evidence that DuPont's negligence was a proximate cause of plaintiff's injuries?

Answer "Yes" or "No"

ANSWER Yes "

## FACTUAL BACKGROUND

Since the jury returned verdicts for plaintiff against both defendants, we must give plaintiff the benefit of the most favorable view of the facts and all inferences therefrom. With the above in mind, the jury could have reasonably found the following:

On June 4, 1969, at about 1:40 P.M., the series of explosions of smokeless gun powder occurred at rest houses numbered 307 and 396 at DuPont's plant at Carney's Point, New Jersey. On the date and at the time in question, plaintiff, a 34 year old brakeman for PRSL, and two fellow crewmen were resting in a bunkhouse located on property leased by the railroad from DuPont, approximately 4,500 feet from the site of the explosions.

Plaintiff had completed a tour of duty from Camden, New Jersey, to Carney's Point, New Jersey, at about 8:30 A.M. on June 4, 1969, and was resting until his next tour of duty back to Camden at 6:00 P.M. that night.

The force of one of the explosions caused plaintiff to strike his head against a plywood partition between the bunks. Immediately after the accident, plaintiff complained of no serious affects. At about 10:40 P.M. plaintiff reported that he did not feel well; however, he completed his shift of duty on the morning of June 5, 1969, and he has not worked since that time.

Plaintiff was subsequently diagnosed as having a herniated disc caused by the June 4, 1969, accident. On March 27, 1970, he underwent a decompression laminectomy. Plaintiff's treating physician testified that the symptoms of pain and numbness in the neck radiating across the shoulder and down the upper left extremity is a permanent condition.

The explosions were severe with extensive damage to DuPont's plant and damage to property as far as one and one-half miles away. The cause or causes for the explosions have never been determined.

## DUPONT'S MOTION FOR JUDGMENT N.O.V.

The thrust of DuPont's first argument in support of its motion for judgment N.O.V. (which is also the basis of several of its arguments for a new trial) is that no basis existed from which the jury could find that the plaintiff's injury was foreseeable. Only by making inferences from the evidence which are impermissive could the jury reach such a conclusion.

According to New Jersey law under which this case was decided, the basis for liability is foreseeability of harm and the measure of duty is care in proportion to the foreseeable risk. Basically, DuPont contends that the only testimony of foreseeability is the following: 1) the rest houses contained 159,743 lbs. of smokeless powder; 2) the table of safe distances indicates the minimum safe distance for storing 159,700 lbs. of powder without a barricade was 3,870 feet; and 3) the bunkhouse was 4,500 feet away. From this, they argue that because the bunkhouse was beyond the minimum safe distance, the only conclusion the jury may properly draw is that injury to the plaintiff was unforeseeable.

However, other evidence in the record indicates that the explosion caused property damage as far away as one and one-half miles (*i. e.* 7,920 feet). Recognizing this, DuPont argues that the only factor which could have caused damage at such a distance is a "completely unforeseeable phenomenon". DuPont contends that explosion damage more than one and one-half miles away would not permit the jury to infer that the rest houses contained more than 159,743 lbs. of powder. Only with the aid of an expert could they reach such a conclusion.

Accordingly, counsel for DuPont requested that the jury be instructed, "they have no basis for extrapolating the safe distance tables or arriving at conclusions with respect to amounts of powder not covered in the tables".

Their contention is that an expert would be needed to determine whether the table continues proportionately or whether it is proportional only to a certain quantity. It may be true that the jury could not extrapolate such a table in order to fix exactly the amount of powder causing damages at a specified number of feet without an expert. We cannot say that the jury required an expert to recognize that more powder causes a larger explosion, which would cause damage at a greater distance.

Courts have regularly taken judicial notice of elementary scientific facts and principles. Knowledge of such scientific facts required by the jury in this case requires no more experience or careful study than knowledge of other scientific facts of which courts have taken judicial notice in the past. *See* H. W. St. John & Co. v. The Flying Spray, 149 F.Supp. 737 (S.D.N.Y.1956), Fowler v. Tennessee Valley Authority, 321 F.2d 566 (6th Cir. 1963). The conclusion in this case would not be "so far removed from the ordinary pursuits of life that knowledge . . . can only be acquired by continued study and experience" (Sanders v. Glenshaw Glass Co., 204 F.2d 436, 439 (3d Cir. 1953), cert. denied, 346 U.S. 916, 74 S.Ct. 278, 98 L.Ed. 411 (1953).)

■ The jury may have believed that 159,743 lbs. of smokeless powder was in the rest houses and infer that the plaintiff's injury was a "completely unforeseeable phenomenon". Or the jury may have believed that there was property damage at one and one-half miles and infer from this damage that there was more than 159,700 lbs. of smokeless powder in the rest houses. The inferences are equally reasonable and clearly within the jury's province. From their finding in the third special interrogatory, we must conclude that the jury arrived at the latter conclusion. Accordingly, the plaintiff's injuries would not have been unforeseeable by DuPont. DuPont is not entitled to a directed verdict by reason of unforeseeability.

■ Next, DuPont contends there was no evidence of negligent conduct on their part, making the jury's verdict merely speculation based on suggestions of the plaintiff's counsel. The plaintiff alleged, and the jury was so instructed, that DuPont's negligence was based on three particulars including the absence of a sprinkling system in the rest houses where the explosion occurred. DuPont contends there was no testimony to show that the absence of the sprinklers was negligent. Eldried Randolph, manager of the Carney's Point works at DuPont, testified that all of the operating buildings were equipped with automatic sprinklers.[2] The buildings in which the accident occurred did not have such devices.[3] Smokeless powder explosions are caused by fire and the build-up of pressure.[4] Sprinklers would prevent smokeless powder from burning and therefore prevent the build-up of pressure.[5]

■ The amount of care which must be exercised to guard against injury is commensurate with the risk involved. New Jersey Fidelity & P. G. Ins. Co. v. Lehigh Valley R.R., 92 N.J.L. 467, 105 A. 206 (1918), cert. denied, 249 U.S. 600, 39 S.Ct. 258, 63 L.Ed. 796 (1919). The question of whether such care was adequate is one for the jury and the court will not disturb it where it is based upon competent evidence.

■ Notwithstanding the foregoing, the jury was also instructed that they could find liability on the basis of the doctrine of *res ipsa loquitur*. DuPont argues that a judgment N.O.V. should be granted because that doctrine is not applicable in this case. The third circuit in Joseph T. Ryerson and Sons, Inc. v. H. A. Crane and Bro., Inc., 417 F.2d 1263 (1969), held that the law of New Jersey generally requires the plaintiff to satisfy three elements for a *res ipsa lo-*

2. Transcript 12/3/71, p. 51

3. Transcript 12/3/71, p. 51

4. Transcript 12/3/71, pp. 49, 50

5. Transcript 12/3/71, p. 55

*quitur* charge. These three elements are as follows:

(1) The accident which produced the injury was one which ordinarily does not happen unless someone was negligent.

(2) The instrumentality or agency which caused the accident was under the exclusive control of the defendant; and

(3) The circumstances indicated that the untoward event was not caused or contributed to by an act or neglect on the part of the injured person.

DuPont argues that the first element has not been met. They point to expert testimony that the only possible cause of the explosion was a fire. Further, they contend that the plaintiff's attorney admitted that the fire was the cause of the explosion. New Jersey recognizes that a fire may occur without negligence, therefore it does not permit the doctrine of *res ipsa loquitur* to be applied where the plaintiff's injury is the result of a fire of unknown origin on the defendant's premises (Menth v. Breeze Corp., 4 N.J. 428, 73 A.2d 183 (1950).)

In order to apply the doctrine of *res ipsa loquitur*, the accident which produced the injury must be one which ordinarily does not happen unless someone is negligent. The accident here was an explosion on the premises of a smokeless powder manufacturer. In *Menth, supra,* at 435–436, 73 A.2d at 186, the New Jersey court stated:

"The rule of *res ipsa loquitur* is *infrequently applied to* cases involving *fires,* and *to a lesser extent to explosion* cases . . .

Whether a fire case falls within the operation and scope of the *res ipsa loquitur* rule must of necessity depend upon the particular facts and circumstances appearing in the individual case. The surrounding circumstances under which a fire is communicated to the premises of a neighbor may in *exceptional or unusual cases* justify the application of the rule. The general rule, however, is that the destruction of property by fire, either on the premises where it starts, or upon other property to which it is communicated, does not of itself raise a presumption of negligence in either the kindling or management of the fire *unless there are special circumstances present which lead to a reasonable conclusion that due care was wanting."* [Emphasis added.]

*Menth, supra,* recognizes that the rule of *res ipsa loquitur* may be applied to explosion cases (indeed, it may also be applied to certain cases involving fires). In order to determine whether the rule is applicable, it is necessary to look at the facts and circumstances surrounding such fire and explosion in order to determine whether reasonable care is wanting.

■■ New Jersey has long recognized that a higher degree of care is necessary when the risk of injury has increased (Howell v. Lehigh Valley R Co., 94 N.J.L. 213, 109 A. 309 (1920), cert. denied, 253 U.S. 482, 40 S.Ct. 482, 64 L.Ed. 1024 (1920).) Manufacturers of explosive powder have been required to exercise an exceptionally high degree of care. In Herz v. E. I. DuPont De Nemours & Co., 99 N.J.L. 407, 123 A. 878 (1924), the New Jersey court recognized this when they stated, "the degree of care required as to explosives, as in the case of other dangerous agencies, must be commensurate with the apparent danger, and in the case of a manufacturer of highly explosive powder, must be a high degree of care."

■■ Acts which would not be negligent for some manufacturers are negligent when engaged in by other manufacturers. A manufacturer of explosive powder is under a greater duty to guard against and avoid fires than other manufacturers or possessors of land. New Jersey has recognized this by permitting the doctrine of *res ipsa loquitur* to be applied in cases of fire and explosion on the premises of a manufacturer of highly explosive or inflammatory products. Such was the case in Gilroy v. Standard Oil Co., 107 N.J.L. 170, 151 A. 598

(1930), where the plaintiff, while riding along a public highway adjacent to the defendant's premises, was injured as a result of a fire and explosion in the pump house of defendant's refinery. The New Jersey supreme court, in affirming the lower court decision in which the jury was charged under the doctrine of *res ipsa loquitur*, gave tacit recognition to the fact that this case was one involving peculiar facts and circumstances justifying application of the doctrine. In the instant case, the facts are similar to *Gilroy, supra*, therefore the doctrine of *res ipsa loquitur* is equally applicable.

DuPont is therefore not entitled to a directed verdict by reason of improper application of the rule of *res ipsa loquitur*.

## PRSL MOTIONS FOR JUDGMENT N.O.V. AND NEW TRIAL

PRSL has moved for entry of judgment in its favor, or in the alternative for a new trial, alleging that the plaintiff has failed to present sufficient evidence to allow a jury to conclude that the defendant was negligent and/or that such a verdict was against the clear weight of the evidence. The court charged the jury that PRSL could be held negligent for: 1. placing a bunkhouse in such close proximity to an explosive manufacturing plant, when it knew or should have known of explosions at the plant in the past, or 2. by failing to provide a bunkhouse which would withstand the force of the explosion which occurred on June 4, 1969, and in otherwise taking precautions to assure the safety of employees in the bunkhouse in the event of such explosion.[6]

■ PRSL was familiar with the dangerous propensities of the smokeless powder being manufactured at Carney's

Point works. Eldried Randolph, manager of the Carney's Point works, testified that there had been a previous explosion at Carney's Point.[7] Robert Leavens, a PRSL employee, testified that he knew they manufactured gun powder at Carney's Point, that the railroad picked-up cars containing smokeless powder from Carney's Point and that the railroad had regulations requiring such cars containing smokeless powder to be positioned at least five cars away from the engine and five cars away from the caboose.[8] Also, the waybills for such cars are marked "D" for dangerous.[9] Yet despite its statutory duty under FELA to provide a reasonably safe place in which to work for its employees, PRSL moved its bunkhouse from the town of Pennsgrove which is three miles away from Carney's Point, to a new location contiguous with the works.[10] This evidence was sufficient to support the finding that PRSL was negligent in accordance with these charges, especially in view of the high standard of care imposed under FELA. See Gallick v. B & O RR, 372 U.S. 108 at 116, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963).

PRSL has alleged numerous errors in the omission and exclusion of evidence. We have considered each allegation and find that they do not effect substantial rights or are otherwise without merit. We will not lengthen this opinion by discussing each one in detail.

### INDEMNITY

PRSL further argues that they should be indemnified by DuPont because their liability, if any, is secondary. While courts have confused passive negligence with secondary liability, the New Jersey courts have been careful to distinguish between passive negligence and secondary liability. As was stated in Adler's Quality Bakery, Inc. v. Gaseteria, Inc.,

---

6. Transcript 12/7/71, p. 361

7. Transcript 12/3/71, p. 24

8. Transcript 12/2/71, p. 87

9. Transcript 12/3/71, p. 152

10. Transcript 12/2/71, p. 88

32 N.J. 55, 159 A.2d 97 at 110–111 (1960):

"We reject any rule which would attempt to determine whether the negligence of [a] party seeking indemnity was active or passive and to rest the granting of indemnity on that determination."

The New Jersey supreme court held that indemnity would be proper upon the following proof:

"[I]f the [defendant] is able to demonstrate that he is free of fault, and that the strict liability imposed . . . is merely an imputed or constructive fault, then the showing of another's sole responsibility for the losses will entitle the [defendant] to indemnity from the person who actually caused the injuries originally complained of." [159 A.2d at 109]

The court went on to state:

"As was stated in Daily v. Somberg, 28 N.J. 372, 385, 146 A.2d 676, 684 (1958):

'. . . [I]ndemnity amongst tortfeasors has generally been confined to those whose negligence 'is not morally culpable but is merely constructive, technical, imputed, or vicarious'

'. . . It is clearly but an application of the well established rule to hold that should [the defendant] be able to prove itself or its agents *free from any fault contributing to the accident,* then it is entitled to indemnity from a person whose fault in fact caused it." *id.* at 110. [Emphasis added.]

 The negligence of PRSL was found to be actual, not constructive or imputed. Accordingly, PRSL is not entitled to indemnity. FELA actions require some showing of negligence, however slight, (Kuberski v. N. Y. Central RR Co., 359 F.2d 90 (2 Cir. 1966)) therefore PRSL cannot be said to be "free from any fault contributing to the accident" which it must show to be indemnified under New Jersey law.

Accordingly, PRSL's cross-claim for indemnity is denied.