TEXAS & NEW ORLEANS RAILROAD COMPANY v. L. A. BELLAR ET AL.

Decided May 26, 1908.

**1.—Fires—Negligence—Proximate Cause—Escape of Fuel Oil.**

Where a railroad company negligently permits fuel oil to escape from its oil tanks and to saturate the ground adjacent to plaintiffs' property, it is responsible for the destruction of the property by fire communicated through the oil, whether the oil was ignited by the employes of the defendant or by any other agency. The condition of the ground, brought about by the negligence of the company, was at least a concurring cause of the damage.

**2.—Same—Escape of Fuel Oil—Negligence.**

In a suit for damages to property by fire, evidence considered, and held to support a finding that a railroad company was guilty of negligence in permitting fuel oil to escape from its tanks and saturate the adjacent ground, and in knowingly permitting such condition to continue for more than a year.

**3.—Same—Petroleum—Judicial Knowledge.**

A court will take judicial knowledge of the nature and inflammable character of crude petroleum.

**4.—Same—Damages—Intervening Agency.**

Where defendant was guilty of negligence in permitting the ground adjacent to plaintiffs' houses to become saturated with fuel oil, whereby they were burned, the fact that more oil was conveyed to the lots on which the houses were situated by the bursting of a nearby water main on the day before the fire was not such an independent, intervening agency as broke the causal connection between defendant's negligence in permitting the oil to escape and the burning of the houses, as would relieve the defendant from liability.

**5.—Evidence—Hearsay—Origin of Fire.**

A statement by some unknown person at and during a fire as to the origin of the same, is hearsay and not res gestae.

**6.—New Trial—Misconduct of Jury—Hearing Evidence.**

Under the Act of 1905 (Gen. Laws, page 21) it is competent for a juror to testify, upon a motion for new trial, to misconduct of the jury during deliberations, upon proper allegations to that effect. But evidence as to alleged misconduct of a jury considered, and held insufficient to entitle the defendant to a new trial.

Appeal from the District Court of Jefferson County. Tried below before Hon. E. E. Easterling, Special Judge.

*Baker, Botts, Parker & Garwood, Parker & Hefner* and *Will E. Orgain,* for appellant.

*Smith, Crawford & Sonfield, John Lovejoy* and *Jno. W. Parker,* for appellees.

McMEANS, ASSOCIATE JUSTICE.—This was a suit brought by the

appellees, L. A. Bellar and wife, against the appellant, Texas & New Orleans Railroad Company, for damages resulting to them from the loss by fire of two houses in Beaumont.

Appellees alleged that appellant negligently permitted oil to escape from an oil tank on its premises and from tank cars on its switches, and that the oil so escaping saturated the ground upon which their houses were situated, as well as all that intervening between the tank, switches and plaintiffs' premises, rendering the same highly inflammable, extra hazardous as regarded the danger of being set on fire, and that such condition greatly increased the danger of fire and was the proximate cause of the fire which destroyed their houses. They also alleged the destruction of the houses by fire, which fire, they alleged, started in the nighttime, and "was carelessly and negligently set by defendant, its agents and servants in operating its engines and cars adjacent to plaintiffs' premises, by fire escaping therefrom, or by said employes in some other manner, or by its employes otherwise engaged in its behalf thereabout, or by some other person or agency, plaintiffs being unable to point out with any greater certainty the origin or cause of the fire, but allege that same would not have been set out and plaintiffs' property destroyed but for the highly inflammable and extra hazardous condition in which plaintiffs' premises were placed by the escape of oil, as aforesaid." They further alleged that they protested to defendant against the continuance of such negligence and repeatedly requested defendant to remove the oil and to stop the cause that produced the condition of danger from fire, which defendant failed to heed, and that the defendant, in the exercise of ordinary care should have foreseen the destruction of plaintiffs' property as likely to result from such condition.

The defendant answered by general denial and specially pleaded that the fire was not caused by fault on its part, but from causes over which it had no control, and for which it was in no wise responsible.

The case was tried before a jury and resulted in a verdict and judgment for the appellees, from which the railroad company has appealed.

Mrs. Bellar owned in her own right lot 9 in block 31 of the Van Warmer addition to the city of Beaumont and she and her husband, L. A. Bellar, owned in community lot 10 in said block. On lot 9 there was a two-story frame house of nineteen rooms and on lot 10 there was also a two-story frame house, and on both lots there were necessary outhouses, wells, cisterns, fences, etc. These lots were situated south of and abutted on the right of way of appellant's railroad. The railway at this point ran east and west, and the main line track was about 300 feet north of the two houses. Between this track and the lots there were eight or nine sidetracks, the nearest of these to the lots being about 20 feet. About 275 feet west from the lots appellant maintained an oil tank 30 x 20 feet in dimensions in which it stored oil for use in its locomotives, the oil being pumped therein from tank cars. On the track nearest the lots defendant kept cars of oil nearly all the time, there being on some days only one or two and on other days from seven to eight. The general slope from the tank was in the direction of the Neches River which was east of the lots, and which made the slope toward plaintiffs' premises. It was not controverted that oil in large quantities leaked or escaped from the tank and from the cars and overran and saturated the

ground between the tank and the lots, but the evidence was conflicting as to whether it flowed onto the lots in question.

The jury was justified in finding, and in support of the verdict we find that the oil did flow onto plaintiff's lots and under the house situated on lot 9. Some of the witnesses testified that the territory mentioned was a lake of oil; others that oil stood in pools, and that all the ground was saturated; the oil stood four or five inches deep under a part of the house on lot 9. This condition had existed for more than a year before the fire.

The oil was crude petroleum and of the character used as fuel by defendant for generating steam in locomotives, and was highly inflammable; and on several occasions before the houses were burned the oil had caught on fire on parts of the ground covered by it, but had been extinguished before any serious damage was done. On the night of October 29, 1903, the oil in some way, unexplained by the testimony, caught fire and, burning upon the ground, finally communicated fire to the house on lot 9, first catching at the northwest corner, and consumed the entire building and from the burning of this house fire was communicated to the house on the other lot, burning it also, and thereby appellees were damaged in the amount found by the jury. No one testified as to the manner in which the fire was set out; but when first discovered the oil on the ground from near the sidetrack nearest the houses was ablaze, and the fence on the west side of the lots was on fire and the flames had taken hold of the northwest corner of the house on lot 9 and were running up the side of the house. It is a reasonable inference from the facts stated, and in support of the verdict of the jury we find that the fire which caused the destruction of appellees' property was communicated by the burning oil, and but for the presence of the oil the loss would not have ensued; that the spreading of the oil over the ground was due to the negligence of appellant, and was the proximate cause of appellee's damages. The day before the fire a water pipe near plaintiffs' premises bursted and the escaping water flowed onto the lots in question, carrying with it a larger quantity of oil than was there before, but we find that the danger to plaintiffs' property was not materially increased thereby.

By its first assignment of error appellant complains of the refusal of the court to instruct a verdict for defendant as requested in its first special charge.

The second assignment complains that the verdict and judgment were without evidence to support them in many particulars, prominent among which were the following: That the evidence did not show (1) that the defendant started the fire or that it was in any manner responsible for its origin; (2) nor that defendant was negligent in permitting the escape of the oil; (3) nor that the oil was in itself dangerous or that it did or could cause the damage complained of without the intervention of some independent, intervening cause; (4) nor that the oil was so highly inflammable as to constitute a menace to the plaintiffs' property; (5) nor that the defendant could have reasonably foreseen that such a result would ensue from allowing oil to escape; and (6) that the flowing of oil onto plaintiffs' premises was due to the bursting of a water pipe the day before the fire which caused plaintiffs' premises to be flooded, the water carrying the oil onto the lots; and that this was an independ-

ent, intervening cause between the escape of the oil and the destruction of the property without which the loss would not have ensued, and which result defendant could not have reasonably foreseen.

The court in its charge submitted to the jury the issue of negligence on the part of defendant in allowing the oil to escape, and the question of whether such negligence was the proximate cause of the damage sustained by the plaintiffs. No objection to the form or substance of the charge is made.

By its first proposition under the assignments appellant contends that the escape of the oil was not shown to have been the proximate cause of the fire and the consequent destruction of plaintiffs' property, but that the proximate cause of the loss was the communication of the fire to the oil, and inasmuch as the origin of the fire was not shown the defendant can not be held liable.

The finding of the jury that the negligence of the defendant in permitting the oil to escape, thereby causing the ground to become so saturated with oil as to create the danger of setting fire to plaintiffs' property, was the proximate cause of the destruction of the property, is sustained by the evidence. The fact that the fire might have started from some cause other than through an act of the railroad company does not exculpate the defendant. It may be that the defendant was in no wise responsible for the origin of the fire, and the evidence does not show that it was, but it was responsible for the part its negligence performed. That negligence consisted in bringing about a condition which subjected the plaintiffs' property to a danger which resulted in its destruction, which did not theretofore exist, and which danger and result was reasonably apparent to and should have been foreseen by a person of ordinary prudence. It is true that the oil of itself did not create the danger, and that the danger therefrom did not arise until some other act was performed, namely, the kindling of the fire which ignited the oil. Neither would the kindling of the fire at a point near or remote from the property have created the danger but for the presence of the oil. It is not always the last act of cause or nearest act to the injury that is the proximate cause, but such act, wanting in ordinary care, as actively aided in producing the injury as a direct and existing cause. It need not be the sole cause, but it must be a concurring cause, such as might reasonably have been contemplated as involving the result under the attending circumstances. Gonzales v. Galveston, 84 Texas, 7; Gulf, C. & S. F. Ry. v. Rowland, 90 Texas, 370; New York T. & M. Ry. v. Green, 36 S. W., 813; Galveston v. Posnainsky, 62 Texas, 134; Mexican Nat. Ry. v. Mussette, 86 Texas, 719; Seale v. Gulf, C. & S. F. Ry., 65 Texas, 277.

Appellant by its second proposition contends that it was not sufficient to show, merely, that the damage was caused by oil escaping from defendant's premises, but that the plaintiffs must go further, and show that it was through the negligence of the defendant that the oil so escaped. The proof shows that the oil escaped, with the knowledge of defendant, in such large quantities as not only to saturate and stand upon defendant's land, but to invade the premises of plaintiffs, and that this condition existed, and was permitted by defendant to exist, for probably more than a year before the catastrophe, although its servants more than once had been remonstrated with in regard to that state of affairs and

had failed to correct it. The evidence was sufficient to justify the jury in finding that the escape of the oil was due to the defendant's negligence.

Appellant contends by its third proposition that as there was no proof that crude oil spread over the surface of the ground is so highly inflammable as to constitute a menace to, or indicate to the mind of a reasonably prudent person that it would cause the burning of adjacent property, and that in the absence of such testimony the law will not presume in favor of plaintiffs, nor can the court judicially know, the fact. It is our opinion that this court can take judicial knowledge of the nature and inflammable character of crude petroleum. 16 Cyc., 855. But independent of this, the jury had before it sufficient testimony to prove the combustible quality of such oil. It was shown that the railroad company was using such oil as fuel in its locomotives, and that on several different occasions the oil on the ground had, in some manner not explained by the evidence, become ignited.

Nor can we agree with appellant that the bursting of the waterpipe and the flooding of the plaintiffs' premises in consequence, and the carrying of larger quantities of oil by the water on the lots was an independent intervening agency which broke the causal connection between the escape of the oil and the destruction of the property, as contended in its fifth proposition. The evidence showed that conditions at the time of the fire were the same as before the bursting of the pipe and such conditions had existed for more than a year. The only effect of the inrush of the water was to carry additional oil on the lots and to cause it to rise higher from the ground. It is not perceived how the flooding of the lots by water in any way increased the danger from fire. The assignments are overruled.

On the trial appellant offered to prove by the witness Eastham that during the early stage of the fire he heard a party at the fire make a statement to the effect that the fire was caused by the overturning or explosion of a lamp in the upper story of the building. The sustaining of an objection to this testimony is made the basis of appellant's fourth assignment of error. The testimony was hearsay and was properly rejected. It was not competent either as part of the *res gestae* or as corroborative of other testimony given by witnesses for defendant as to the origin and cause of the fire. The assignment is overruled.

In its motion for a new trial appellant urged as grounds upon which the verdict should be set aside that the jury before agreeing upon the verdict was guilty of what in legal contemplation amounted to misconduct, to the prejudice of the defendant, in that the jurors, or some of them, were so affected by extraneous matters communicated to them as to probably influence them in arriving at and agreeing to the verdict, and but for the consideration of such matters the verdict rendered would probably have not been rendered. The ground of the motion is not more specific. When the motion was heard, appellant offered to prove by John W. Henderson, one of the jurymen, that during the deliberation of the jury he received intelligence that his wife's mother, who was a member of his family, was very ill and was expected to die at any moment; that up to that time his mind had been concentrated on the case and that he did not at that time feel justified in agreeing to a verdict for plaintiffs; that after receiving said information he was much worried and could

not concentrate his mind upon the facts of the case to the same extent as before, and that he thereafter agreed to the verdict in plaintiffs' favor; that he did not know that the condition of his family caused him to agree to the verdict, but he believed that it hastened the verdict; that but for the information received by him he would have discussed the case more fully, and that he was not altogether satisfied with his verdict. Appellant also offered the testimony of one Henry, one of the jurymen, to the effect that he was among the last, if not the last, of the jurors to consent to a verdict in plaintiffs' favor; that he sympathized with the juror Henderson on account of the sickness in his family and that this may have had something to do with bringing in the verdict, but that he did not agree to the verdict altogether on that account. The introduction of this evidence was objected to on the grounds, (1) that no such matter was set up in defendant's motion for new trial and that there were no allegations in the motion under which such evidence could be introduced; (2) because it was not shown that the evidence offered established that the jury was influenced by the facts stated to render the verdict they did; and (3) that it was incompetent for jurors to, in such manner, impeach their verdict. These objections were sustained and the court refused to hear the evidence in support of the motion, and upon this action of the court error is assigned.

The first two objections were valid and were properly sustained. While formerly the testimony of a juryman tending to impeach his verdict would not be heard, the Legislature has seen fit to enact a law making it competent for a juryman, on motion for new trial, where the ground of the motion is the misconduct of the jury in receiving communications or receiving other testimony than that offered on the trial, to testify to the facts by examination in open court; and upon proof of such misconduct, if the testimony received, or communication made, be material, to authorize the court in his discretion to grant a new trial on such evidence. Acts 1905, p. 21. The evidence offered in support of the motion does not show that the communication in any way prejudiced appellant. According to the statements it at most only hastened a finding by the jury on the facts legally before it. While it would be proper, under appropriate grounds alleged in the motion, to hear proof of improper conduct on the part of the jury in arriving at the verdict, in this instance the matters sought to be proved were immaterial and the refusal of the court to hear the evidence, if error, was harmless.

Appellant's other assignments of error have been examined by us and we do not find reversible error in any of them. The judgment of the District Court is affirmed.

*Affirmed.*

Writ of error refused.