EISENKRAMER v. ECK.

## Opinion delivered February 18, 1924.

1. NEGLIGENCE—SETTING OUT FIRE.—In an action against an adjoining proprietor for destruction of a barn by fire, evidence *held* sufficient to warrant submission of the question of defendant's negligence in allowing weeds to grow and rubbish to accumulate in his back yard so close to the barn as to constitute a menace thereto in case the same should be set on fire, either accidentally or negligently.

2. MASTER AND SERVANT—ACT OF SERVANT IN CAUSING FIRE—JURY QUESTION.—In an action against an adjacent proprietor for causing the destruction of a barn by fire, evidence *held* sufficient to warrant submission of the question whether one alleged to have set fire to weeds and rubbish in defendant's yard was a servant of defendant and acting within the scope of his employment, and whether the fire was caused by his negligence.

3. TRIAL—REPETITION OF INSTRUCTIONS.—Where the court sufficiently covered an issue by its instructions, it was not error to refuse additional requests for instruction on the same issue.

4. TRIAL—REFUSAL OF PEREMPTORY INSTRUCTION.—In an action against an adjacent proprietor for destruction of a barn by fire, an instruction that, if one to whom defendant gave a contract to cut grass and clean up his yard, set fire to the grass, which ignited plaintiff's barn, such act was not that of the defendant, *held* properly refused, as being peremptory, and as ignoring issues which the testimony tended to prove.

Appeal from Jefferson Circuit Court, *John W. Wade,* on exchange Judge; affirmed.

*Reinberger & Reinberger,* for appellant.

There was no proof showing negligence on the part of appellant. Conjecture and speculation cannot supply the place of proof. 113 Ark. 353; 114 Ark. 112. The negro was an independent contractor. The burning of the trash was not within the scope of his employment. He was hired to haul the trash away. See 26 Cyc p. 1534; Instruction No. 21 requested by appellant should have been given, as it defined what an independent contractor was. 77 Ark. 551; 76 Ark. 227. Instruction No. 22, stating under what condition the independent contractor would be liable, should have been given. 53 Ark. 503.

*Caldwell, Triplett & Ross,* and *Powell & Alexander,* for appellees.

Appellant was negligent in the matter of setting out the fire, and is liable for the resulting damages. 81 Ark. 15; 80 Ark. 597; 99 Ark. 600; 64 Ark. 307; 81 Ark. 13; Cooley on Facts, p. 589. Where there is evidence to support a jury's finding, it will not be disturbed on appeal. 145 Ark. 273; 144 Ark. 402.

WOOD, J. Mr. and Mrs. F. W. Eck were the owners of a certain lot in the city of Pine Bluff, Arkansas, on which was situated a barn containing property of the value of $168.40. This barn, with its contents, was destroyed by fire on August 11, 1922. The barn was insured in the Fire Association Insurance Company (hereafter called company), and it paid to Mr. and Mrs. Eck the sum of $152.82 for the loss they sustained.

These actions were instituted by Mr. and Mrs. Eck and by Mrs. Kate Eck and by the company against William Eisenkramer. It is alleged in the complaint that Eisenkramer owned a home adjoining the property of Mr. and Mrs. Eck, and that he allowed a large amount of rubbish to accumulate in his back yard, on the property line next to the barn of plaintiffs; that they requested the defendant, several times, to remove the rubbish and weeds, informing him that same was liable to catch fire and burn plaintiff's barn; that the defendant was notified by the city authorities to remove the rubbish, weeds and trash from his premises; that, on the day of the fire, the plaintiffs were absent in the city of Monticello, which fact the defendant knew; that on that day the defendant caused the weeds and rubbish in his back yard to be set on fire, and the sparks therefrom ignited the barn of the plaintiffs and totally destroyed the same, with its contents; that the destruction of the plaintiff's property was thus caused through the negligence of the defendant; that the contents of the barn were worth $168.40, for which sum the plaintiffs prayed judgment.

The company, in its complaint, alleged that it had issued a policy to F. W. and Kate Eck, and had paid

the sum of $152.88 to them for their loss on account of the fire; that the company was subrogated to the rights of the Ecks in the damages caused by the burning of their barn through the negligence of the defendant. It prayed judgment in the sum of $152.88.

The defendant, in its answer, denied all the material allegations of the complaints.

The testimony on behalf of the plaintiffs tended to sustain the allegations of their complaints. Mrs. Eck testified that she was the owner of the barn mentioned in the complaint, and that it was destroyed by fire on the 11th of August, 1922, while she was in Monticello. The barn was close to defendant's fence, and some of the fence had burned. The barn was burned from the side next to the fence. She did not know how the barn caught on fire. The contents of the barn destroyed were worth $168.40. They were insured with the company, and the company settled with her for the destruction of the contents of the barn on the 19th of August, 1922, and she subrogated her rights to the company by agreement, which was introduced in evidence.

Mrs. W. M. Hardister testified that she lived in a house owned by Mr. and Mrs. F. W. Eck, and that there was a barn in the rear of the house, which was destroyed by fire from trash burning in the defendant's lot. She discovered the flames in the roof of the barn, and turned in the fire alarm. There was a fire in the defendant's yard at the time, and same had been burning there all morning. The barn burned about 1:30 p. m. There was a colored man in defendant's back yard, who was standing there, with his back to the barn, looking north, away from the barn. He made no effort to put out the flames. He had been in the back yard all the morning. It was shown that a reasonable market value of the contents of the barn destroyed was $168.40. An insurance agent estimated the loss of the barn at $189.85. The company paid to Mrs. Eck the sum of $152.88. The policy was introduced in evidence, and the subrogation agreement between Mrs. Eck and the company, which

showed that the company had paid her the sum of $152.88, as she testified. There was no insurance on the contents of the barn.

The defendant testified that he made a contract with an old negro man, named Smith, to clean his yard, for $2.50, and told him to pile the weeds and trash up and haul it away. He didn't exercise any authority over the negro as to the manner in which he should clean the yard, except that he was to clean it and haul the trash away; that it was not necessary for him to burn the trash. His contract was to haul the trash away, and beyond that the negro was to use his own judgment in cleaning the yard. The witness didn't authorize the negro to burn the trash, and didn't exercise any supervision over him. His yard was not in a bad condition. There was a small pile of trash, and some grass and weeds that had grown up. Witness was sure that he told the negro to haul the trash away. The negro had never worked for him before. He had paid the negro fifty cents on the job.

In rebuttal, Henry Smith testified, on behalf of the plaintiffs, that he was employed to clean defendant's garden, in the back of his house, in August, about the time the barn next door was burned. Defendant hired witness to clean the yard, and clean it good. Defendant did not tell witness to haul the trash away, but just told him to clean it up. Witness didn't have a horse and wagon. He had been cleaning yards for nineteen years. He did the job as he thought it ought to be done. Defendant did not tell witness to burn the trash. Witness did not burn the barn. The fire was there when witness got there—papers and stuff burning in the yard. Witness was in the garden, and not in the yard, at the time of the fire, and didn't set the trash on fire. Defendant had nothing to do with it, except he told witness to clean the yard good. Witness didn't know what caught the barn on fire. Didn't know it was on fire until a lady across the street hollered. The trash witness took out of the yard didn't catch on fire, and he didn't set the

trash on fire. There was a fire further over from where witness was, and the barn must have caught from that fire, but witness didn't know how it caught. There was some fire in papers and trash, and children playing around in the yard.

Mrs. Hardister testified that she didn't see a fire in the defendant's yard before the negro got there, but there was a fire there after he got there. She heard defendant say to his wife that she ought to have gone out and made the negro put the fire out. The pile of trash near defendant's fence was burning, and the negro kept piling trash on the same.

Mrs. Eck also testified, in rebuttal, that she heard defendant say that the negro ought to have put the fire out, and that there was a pretty good wind blowing that day—not a hard wind.

There was testimony to the effect that there was rubbish in the back yard of defendant at the time the fire occurred, which was dangerous if a fire started, but that the same condition existed in other yards.

The court, in prayers for instructions given at the instance of the plaintiffs, told the jury, in substance, that, if the defendant was negligent in the manner in which the fire started, or in failing to use reasonable care and diligence to prevent its spreading and doing injury to the barn of the Ecks, and that such negligence was the proximate cause of the destruction of the barn, they should find for the insurance company for the damage done to the barn, not exceeding the amount paid the Ecks by the company in settlement of the said damage; that, if the defendant had rubbish and trash on his premises in his back yard burned, it was his duty to use ordinary care to see that the fire did not spread, and that, if he failed to use such care, and, on account of his or his servant's negligence, the fire spread and burned the barn of plaintiffs, they should find for the plaintiffs; that the master was responsible for acts done by the servant in obedience to the master's express or implied orders and in execution of the master's business,

within the scope of his employment; that it was for the jury to say, under the evidence, whether or not Smith was the servant of the defendant, and whether or not the burning of the trash was within the scope of his employment, and, if so, the defendant was liable for the negligence of Smith, if any; that, if the defendant burned the rubbish in his back yard in such a careless and negligent manner that the fire ignited the barn of plaintiffs, destroying the contents thereof, the jury should find for the plaintiffs such damages as would compensate for the actual damages sustained, if any, as appears from the evidence.

The court, in prayer for instruction No. 16, given at the instance of the defendant, told the jury, in substance, that, if they believed from the evidence that the defendant employed a person to cut and clean up his yard, which required the setting out of a fire, or for a stipulated compensation, and didn't reserve control over the action of said party, then the party is an independent contractor, and the defendant was not liable to the plaintiffs for any fire that said contractor may have set out.

The appellant presented prayer for instruction No. 19, which told the jury to find for the defendant. Also, prayer for instruction No. 21, which was to the effect that, if the defendant employed a person to clean his premises, and said person undertook the work, using his own means and methods, and the defendant retained no right or power to control such person in his work, they should find for the defendant. Appellant presented prayer for instruction No. 22, which was to the effect that, if the defendant entered into an agreement with a person, for a stipulated sum, to clean his premises, but did not authorize the person to burn the rubbish, and that the cleaning of the premises was not necessarily dangerous, the jury should find for the defendant; and in prayer No. 23 that, if the party to whom the defendant gave the contract to cut the grass and clean up the yard lighted a match and set fire to the grass, which ignited the barn of plaintiffs, such act was not the act of the defendant.

The court refused to grant appellant's prayers for instructions Nos. 19, 21, 22 and 23. The appellant duly excepted to the rulings of the court as above set forth. The jury returned a verdict in favor of the Ecks in the sum of $168.40, and in favor of the insurance company against the defendant in the sum of $152.88. Judgments were rendered according to the verdict, from which are these appeals.

1. The appellant contends that there was no evidence to show negligence on his part, but we cannot concur in this view of the testimony. There was testimony from which the jury might have found that the appellant allowed weeds to grow up in his back yard and rubbish to accumulate therein in a large quantity. These were in such proximity to the appellees' barn as, of themselves, to constitute a menace thereto in case the same should be set on fire, either accidentally or negligently. There was testimony from which the jury might have found that the appellant was warned that, on account of this condition of his back yard, the appellees' barn was endangered thereby, and that they requested him to correct the same, but he failed to do so until the day the fire occurred. Also, there was testimony to warrant the finding that appellant had had a fire on his premises before which had threatened to destroy appellees' barn, and also testimony to warrant the finding that the appellees' barn was destroyed by fire about 1:30 p. m., and that fire had been burning in appellant's yard all the morning. These and other facts warranted the court in submitting the issue to the jury as to whether or not the appellees' property was destroyed through the negligence of appellant, as alleged in the complaint, regardless of whether the negro, Smith, in cleaning up the yard, set out the fire or not. The court's declarations correctly submitted the issue of negligence.

There was also testimony from which the jury might have found that the negro, Smith, was employed by the appellant to clean his yard; that Smith was the servant of appellant, in so doing, and was acting within the scope

of his employment, and that the fire was caused through his negligence in setting fire to the rubbish, and that this negligence was the negligence of the appellant. These issues were also submitted to the jury under correct declarations of law.

2. The appellant further contends that the negro, Smith, was an independent contractor, and that, if the fire was caused through his negligence, the appellant was not liable therefor. If it be conceded that the testimony warranted the submission to the jury of the issue as to whether or not the negro, Smith, was an independent contractor, the court gave appellant's prayer for instruction No. 16, which defined an independent contractor, couched in language chosen by the appellant, and submitted that issue to the jury. Having given this instruction, the court did not err in refusing appellant's prayers for instructions Nos. 21 and 22, which related to the same subject, and were sufficiently covered by instruction No. 16, already given.

Instruction No. 23 is peremptory in character, and ignored issues in the case which the testimony tended to prove. The court did not err in refusing same. Upon the whole, we find no error in the rulings of the trial court prejudicial to the appellant, and the judgments are therefore affirmed.