BERNARD MENTH, JOAN MENTH, CHARLES LAMB, MARY LAMB, JOSEPH LAMB, FRANK LAMB, WILLIAM LAMB AND KATHERINE LAMB, PLAINTIFFS-RESPONDENTS, v. BREEZE CORPORATION, INC., A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued January 9, 1950—Decided April 24, 1950.

430

Mr. *William L. Dill, Jr.,* argued the cause for the appellant (*Messrs. Stryker, Tams & Horner,* attorneys).

Mr. *Maurice Schapira* argued the cause for the respondents.

The opinion of the court was delivered by

ACKERSON, J.   This action is for the recovery of damages, stipulated at $3,050, suffered by the plaintiffs when certain of their household furnishings and personal effects in a three-

story frame apartment house where they resided at 27 South Sixth Street, Newark, were destroyed by a fire communicated thereto from a shed on an adjoining unimproved lot leased and used by the defendant in the manner hereinafter stated.

This lot was enclosed by a fence with a large entrance gate on South Sixth Street and was used by defendant for the parking of automobiles of its employees who worked in its factory across the street and for the storage of materials in several small sheds thereon. Plaintiffs' proofs showed that on the northerly side of this lot were three small sheds which backed up to a board fence on the line dividing this lot from the premises occupied by the apartment house so that the southerly side thereof was only three feet from the rear of the sheds, which space was used as an alleyway to the rear of the house. One of these three sheds farthest from South Sixth Street was an open one, 8' x 20' x 12'. Its sides were constructed of wire caging, its front was open and its roof was made of boards covered with tar paper. In this particular shed the defendant stored burlap bags which had an oily discolored appearance and which were used in connection with the transportation of waste aluminum turnings or shavings from the defendant's factory across the street. The aluminum contents thereof were emptied into another shed on the lot and the bags were stored empty (except for such aluminum shavings as adhered to the insides thereof) in the open wire shed.

The plaintiffs' evidence further disclosed that on the afternoon of June 6, 1946, smoke was observed issuing from this open shed. Joseph Lamb, one of the plaintiffs, had just driven up in his car when a guard stationed in an enclosure at the front of defendant's plant, not opposite the lot in question but down the street a way, came up and Lamb followed him through the gate and into the open shed where he saw "smoke and a little flame" on the floor, the latter being "all covered over with bags." The guard then returned to the plant for a fire extinguisher since "there was none at the scene of the fire." By the time he returned with the extin-

guisher, the fire had spread very rapidly and intensely to the adjoining apartment house. A loud noise or explosion accompanied the fire, several cars parked alongside the shed also caught fire and exploded. The two alarm blaze destroyed the side of the building including the apartments which had been occupied by the plaintiffs causing the damage for which they are now seeking recovery.

As soon as the fire was under control, several officers of the Newark Fire Department conducted an investigation on the premises as to the cause thereof. One of them was called as a witness and testified that "In the yard adjoining the frame dwelling we found a number of bags, apparently oil soaked and water soaked. [Because of] the rapidity of the fire and the spread of it we picked up one of those bags, wrapped it in paper, and sent it to our laboratory for analysis * * * . It [a burlap bag] appeared to be oil soaked, in our opinion, at the time * * * but it had been wet with water from the firehoses." The analysis, made by Dr. Warner, at the Police and Fire Laboratory, disclosed the partly burned burlap bag to be saturated with an inflammable mineral oil of the hydrocarbon type and to contain "many" spirals of metallic shavings adhering to the inside thereof—an aluminum alloy and highly inflammable.

The gravamen of the complaint is that the defendant improperly, carelessly and negligently stored combustible and highly inflammable materials on the leased premises without taking proper precautions to prevent their ignition and that such negligence proximately caused the loss of plaintiffs' personal property. An amendment to the complaint added counts charging defendant with failure to keep proper equipment on hand to extinguish a spreading fire, and with violation of city ordinances, and state statutes regulating the storage of highly combustible and inflammable materials.

The trial court at the close of the plaintiffs' case on motion made by defendant dismissed the complaint saying "I don't think the evidence is established from which a jury could draw the conclusion that this fire was the result of spon-

taneous combustion, nor do I think there is evidence to establish any negligence on the part of the defendant. Certainly *res ipsa loquitur* does not apply here."

On appeal the Appellate Division of the Superior Court reversed and ordered a new trial holding that the Law Division should not have dismissed the complaint as plaintiffs' proofs entitled them to a *prima facie* presumption of negligence under the rule of *res ipsa loquitur*. The cause comes before us on certification granted to defendant to review the determination of the Appellate Division.

The appellant's brief raises the question of the applicability of the rule of *res ipsa loquitur* to the case *sub judice*. The argument has several branches but for the purpose of this appeal we need not consider all of them.

It is well settled that, in the absence of legislation to the contrary, liability for injury to others through the escape of fire from premises of which one is in control, must, in general, be predicated upon negligence, and the burden of proof rests upon the plaintiff. *Conrad v. Gerber*, 106 *N. J. L.* 158 (*E. & A.* 1929). Negligence being the gist of the action must be proven. Thus an owner or occupant of premises on which a fire accidentally starts is liable for the communication of the fire to the premises of a neighbor only if he has been guilty of some negligence in connection with its origin or escape. *Read v. Pennsylvania R. R. Co.*, 44 *N. J. L.* 280 (*Sup. Ct.* 1882); *Conrad v. Gerber, supra;* *Reilly v. City of New Brunswick*, 92 *N. J. L.* 547, 548 (*E. & A.* 1918); *Piraccini v. Director General of Railroads*, 95 *N. J. L.* 114, 116 (*E. & A.* 1920).

The rule of *res ipsa loquitur* is infrequently applied to cases involving fires, and to a lesser extent to explosion cases. *Kapros v. Pierce Oil Corp.*, 324 *Mo.* 992, 25 *S. W.* 2d 777, 78 *A. L. R.* 722 (*Mo. Sup. Ct.* 1930); *Highland Golf Club of Iowa Falls, Iowa, v. Sinclair Refining Co.*, 59 *Fed. Supp.* 911, 919 (*Iowa, Dist. Ct.* 1945); *Keyser Canning Co. v. Klots Throwing Co.*, 94 *W. Va.* 346, 118 *S. E.* 521, 31 *A. L. R.* 283, 292 (*W. Va. Sup. Ct.* 1923); *Noonan v. Great Allan-*

*tic & Pacific Tea Co.,* 104 *N. J. L.* 136, 138 (*E. & A.* 1927);
22 *Am. Jur.* (*Explosions and Explosives*), § 95, *p.* 212. The
reasons are not difficult to perceive. The cause of a fire is
generally unknown, fires commonly occur where due care has
been exercised as well as where due care was wanting. Where
a fire originates on a defendants' premises, that alone is not
evidence that it was started by the defendant, nor that the
fire was caused by any negligence on its part. *Little v. Lynn
& Marblehead Real Estate Co.,* 301 *Mass.* 156, 16 *N. E.* 2d
688 (*Mass. Sup. Jud. Ct.* 1938); *Brownhill v. Kivlin,* 317
*Mass.* 168, 57 *N. E.* 2d 539, 540 (*Mass. Sup. Jud. Ct.* 1944);
22 *Am. Jur.* (*Fires*), §§ 75 and 76, *pp.* 642–643.

Whether a fire case falls within the operation and
scope of the *res ipsa loquitur* rule must of necessity depend
upon the particular facts and circumstances appearing in the
individual case. The surrounding circumstances under which
a fire is communicated to the premises of a neighbor may in
exceptional or unusual cases justify the application of the
rule. The general rule, however, is that the destruction of
property by fire, either on premises where it starts, or upon
other property to which it is communicated, does not of itself
raise a presumption of negligence in either the kindling or
management of the fire unless there are special circumstances
present that lead to a reasonable conclusion that due care
was wanting. 22 *Am. Jur.* (*Fires*), § 78, *p.* 644.

It is also essential to the application of the *res ipsa
loquitur* doctrine that those seeking to obtain the benefit of
its presumptive effect must show that in all probability the
direct cause of the injury and so much of the surrounding
circumstances essential to its occurrence were in the exclusive
control of the defendant, or his agents or servants. *Hamrah
v. Clements,* 3 *N. J.* 285 (1949); *cf. Oelschlaeger v. Hahne
& Co.,* 2 *N. J.* 490 (1949); *Woschenko v. C. Schmidt & Sons,*
2 *N. J.* 269, 274 (1949); *Grugan v. Shore Hotels Finance,
etc., Corp.,* 126 *N. J. L.* 257, 262; 38 *Am. Jur.* (*Negligence*),
§ 300, *p.* 996. In case of fire the rule requires that the actual
cause of it must have been under the exclusive control of the

party charged with negligence. Under the testimony before us the fire may have resulted from one or more of several causes, including the acts of third parties or strangers over whom defendant had no control. *Hamrah v. Clements, supra.* Mere possession of the premises and shed from which the fire spread is not a basis for the application of the *res ipsa loquitur* rule. Additionally the instrumentality or thing causing the fire must be shown to warrant the application of the rule. *Hamrah v. Clements, supra; cf. Oelschlaeger v. Hahne & Co., supra; The President Wilson,* 5 *Fed. Supp.* 684, 686 *(Cal. Dist. Ct.* 1933); *Highland Golf Club of Iowa Falls, Iowa, v. Sinclair Refining Co., supra.*

Applying the foregoing tests to the evidence before us, we conclude that the Appellate Division erred in applying the *res ipsa loquitur* rule to the instant case.

Before leaving this subject we feel impelled to note that the defendant, relying on *Bahr v. Lombard, Ayres & Co.,* 53 *N. J. L.* 233 *(E. & A.* 1890), and *Levendusky v. Empire Rubber Mfg. Co.,* 84 *N. J. L.* 698 *(E. & A.* 1913)—to the effect that the rule of *res ipsa loquitur* is not applicable when a plaintiff fails to present evidence reasonably within his power which might explain the cause of the accident—insists that the rule is not applicable here because, *inter alia,* plaintiffs made no attempt to seek further evidence through interrogatories, depositions or pretrial hearings. The cited cases, however, did not involve the question of the use of such pretrial procedures and their reasoning is not applicable thereto. We see no merit in this attempt to circumvent the application of the rule and therefore hold that plaintiffs' failure to use such pretrial procedures in an effort to elicit specific acts of defendant's negligence does not bar the application of the *res ipsa loquitur* rule if its other requirements are satisfied. A contrary conclusion would tend to undermine the effectiveness of the rule. *Cf. Rapp v. Butler-Newark Bus Line,* 103 *N. J. L.* 512, 514 *(Sup. Ct.* 1927); affirmed, 104 *N. J. L.* 444 *(E. & A.* 1927); *Markowitz v. Liebert & Obert,* 23 *N. J. Misc.* 281, 286-287 *(Sup. Ct.* 1945).

■ The important point remaining for consideration is whether or not the plaintiffs have established a *prima facie* case of negligence apart from the rule of *res ipsa loquitur*. The rejection of that rule does not mean that the plaintiffs are precluded from showing defendant's negligence by circumstantial or direct evidence of specific acts from which liability may be inferred. *Keyser Canning Co. v. Klots Throwing Co., supra; Standard Oil Co. of New Jersey v. Midgett*, 116 *F.* 2d 562, 565 (*C. C. A. 4th Cir.* 1941); *Kapros v. Pierce Oil Corp., supra.*

■ With this in mind we turn to consider whether or not there was substantial evidence from which the jury could have properly concluded that the defendant was negligent as alleged in the complaint. On such a consideration, of course, the plaintiffs are entitled to every reasonable and fair inference that can be drawn from the evidence presented.

■ At the trial an effort was made by the plaintiffs to show that the origin of the fire was spontaneous combustion or ignition caused by the defendant's negligent storing of a considerable quantity of burlap bags impregnated with the same inflammable materials as were found in the bag examined by the chemical expert, Dr. Warner. He was the only witness produced on this phase of the case and a hypothetical question was addressed to him by the plaintiffs as to whether or not the fire probably resulted from spontaneous combustion or ignition was rejected by the trial court because the question assumed that the bags in the open shed contained the same type of oil as that found in the examined bag without any direct proof of that fact. Without objecting to the exclusion of this question, the plaintiff's attorney reframed it by omitting any reference to oil in the bags in the shed and the answer was that the bags with the adhering metal shavings alone would not develop spontaneous ignition. Under such circumstances, of course, the plaintiffs are in no position to take advantage of any error there may have been in the court's ruling on the original question.

██ Our attention is directed to the fact that later in his examination the doctor testified that the burlap bags plus the aluminum shavings could ignite spontaneously if an intermediary was present saying: "If there was oil the possibility is that the weather conditions, not necessarily on that day but hours and days before generated sufficient heat to cause a fire; that fire in turn would ignite the shavings \* \* \*." There was no testimony, however, that the proper weather conditions existed for a fire to have been generated by spontaneous combustion. While we believe that the evidence before the court presented sufficient circumstances from which a jury could have properly inferred that the burlap bags stored in the shed contained oil and aluminum shavings similar to those found in the bag which was analyzed (there seems to be no dispute about the shavings), nevertheless, we find no competent evidence from which it could be found that the fire originated from spontaneous combustion.

However, the plaintiffs' case does not rest alone upon a finding of negligence in causing a fire by spontaneous combustion. The plaintiffs further claim that they have made out a *prima facie* case of defendant's negligence in storing a quantity of highly combustible materials in an open shed with wire sides and a frame and tar paper roof, three feet away from a three-story frame apartment house in such a way as to create a dangerous fire hazard without taking adequate precautions to prevent their ignition which resulted in the damages here complained of.

██ ██ It is the settled rule that the owner of property is not liable for the spread of a fire which is accidentally started thereon by the act of a stranger or by some other cause with which he is not connected, unless he is guilty of negligence in respect to the condition of his premises or in failing to prevent the spread of the fire, after he has notice of the existence of the fire on his premises. 22 *Am. Jur.* (*Fires*), §§ 12, 13, *pp.* 602-604; *Notes:* 42 *A. L. R.* 783, 814 *et seq.;* 111 *Ibid.* 1140 *et seq.;* 5 *Ibid.* 1378 *et seq.* However if an owner or occupier by reason of his negligence has kept his

premises in an unsafe and dangerous condition, as by the accumulation of inflammable material thereon so as to create a fire hazard to adjoining property in the event such material becomes ignited, such negligent owner or occupier may be held answerable for the damage caused by the spread of the fire even though such fire may have been started by the act of a third person or independent agency or any unauthorized act, if such act was reasonably foreseeable as the natural and probable consequence of the negligent manner in which the premises were kept. The intervening negligent acts of strangers or intruders which might start a fire communicated to adjoining premises may constitute a danger which such owner or occupant reasonably should have contemplated and guarded against. *Prince v. Chehalis Savings & Loan Ass'n*, 186 *Wash*. 372, 58 *P*. 2d 290 (*Wash. Sup. Ct.* 1936); *Quaker Oats Co. v. Grice*, 195 *F*. 441 (*C. C. A. 2nd Cir.* 1912); *Arneil v. Schnitzer*, 173 *Or.* 179, 144 *P*. 2d 707 (*Oregon Sup. Ct.* 1944); *Keyser Canning Co. v. Klots Throwing Co., supra; Leahy v. Standard Oil Co.*, 224 *Mass*. 352, 112 *N. E*. 950, 952 (*Mass. Sup. Jud. Ct.* 1916); *Brown v. Standard Oil Co. of New York*, 247 *F*. 303 (*C. C. A. 2nd Cir.* 1917); *Standard Oil Co. of New Jersey v. Midgett, supra; Texas & New Orleans R. Co. v. Bellar*, 51 *Tex. Civ. App.* 154, 112 *S. W*. 323, 325 (*Texas Ct. of Civ. App.* 1908); *Eisenkramer v. Eck*, 162 *Ark*. 501, 258 *S. W*. 368 (*Ark. Sup. Ct.* 1924); *Phillips Petroleum Co. v. Berry*, 188 *Ark*. 431, 65 *S. W*. 2d 533 (*Ark. Sup. Ct.* 1933); 22 *Am. Jur.* (*Fires*), § 11, *p.* 602; *Ibid.*, § 43, *p.* 621; 38 *Am. Jur.* (*Negligence*), §§ 67, 69, *pp.* 721, 726; 2 *Restatement of Torts*, § 449, *p.* 1202; *Note:* 5 *A. L. R.* 1378 *et seq.* The test of duty imposed by law upon a defendant so circumstanced, is to exercise "reasonable foresight for harm." *Beck v. Hines*, 95 *N. J. L*. 158, 162 (*E. & A.* 1920). In this connection, it was said in the recent case of *Carlo v. Okonite-Callender Cable Co.*, 3 *N. J.* 253, 263 (1949), that:

"There was a duty at common law for persons having control of dangerous materials to exercise care commensurate with the risk of

danger consistent with the dangerous character of the material involved. Whether or not the requisite care has been exercised in a particular situation is for the jury's determination."

▮ Of course, it is incumbent upon the plaintiffs to show that the alleged negligent storage of combustible materials on the defendant's premises was the proximate cause of their damages and defendant claims that they have failed to do so. But as was said in the case of *Arneil v. Schnitzer, supra:*

"We know of no decision which holds that one who maintains his property so negligently that it menaces his neighbors, is liable for the destruction of their premises by fire which started upon his, only in the event that he himself applies the match. To·the contrary, we are satisfied that the owner's negligence is the proximate cause of the damage to the neighbor, even if a stranger communicated the spark; unless the circumstances are such that no prudent person would have anticipated the stranger's act."

See also cases last above cited.

▮ Defendant argues that the word "proximate" indicates that there must be no other culpable or efficient agency intervening between defendant's alleged dereliction and the loss, but it is well settled that an intervening cause will not relieve from liability where the prior negligence was the efficient cause of the damage. *Yanas v. Hogan,* 133 *N. J. L.* 188, 190 (*Sup. Ct.* 1945).

▮ There may be any number of causes and effects intervening between the first wrongful act and the final injurious occurrence and if they are such as might, with reasonable diligence, have been foreseen, the last result as well as the first, and every intermediate result, is to be considered in law as the proximate result of the first wrongful cause. A tortfeasor is not relieved from liability for his negligence by the intervention of the acts of third persons, including the act of a child, if those acts were reasonably foreseeable. The theory being that the original negligence continues and operates contemporaneously with an intervening act which might reasonably have been anticipated so that the negligence can be regarded as a concurrent cause of the injury inflicted. One

who negligently creates a dangerous condition cannot escape liability for the natural and probable consequences thereof although the act of a third person may have contributed to the final result. The law of negligence recognizes that there may be two or more concurrent and directly cooperative and efficient proximate causes of an injury. *Davenport v. McClellan*, 88 *N. J. L.* 653 (*E. & A.* 1915); *Daniel v. Gielty Trucking Co.*, 116 *N. J. L.* 172 (*E. & A.* 1935); 38 *Am. Jur.* (*Negligence*), § 63, *p.* 715; *Ibid.*, § 70, *pp.* 726-727.

In the last cited case at *pp.* 173-174 of 116 *N. J. L.*, will be found an excellent discussion of the effect of an intervening agency upon the doctrine of proximate cause in the following language:

" 'The mere fact that another person concurs or co-operates in producing the injury or contributes thereto, in any degree, whether large or small, is of no importance, * * *. It is immaterial how many others have been in fault, if the defendant's act was an efficient cause of the injury.' 1 *Shearm. & R. Negl.*, § 31.

" 'The connection between the defendant's negligence and the plaintiff's injury may be broken by an intervening cause. In order to excuse the defendant, however, this intervening cause must be either a superseding or a responsible cause. It is a superseding cause, whether intelligent or not, if it so entirely supersedes the operation of the defendant's negligence that it alone, *without his negligence contributing thereto in the slightest degree, produces the injury.* It is a responsible one, if it is the culpable act of a human being, who is legally responsible for such act. The defendant's negligence is not deemed the proximate cause of the injury, when the connection is thus actually broken by a responsible intervening cause. *But the connection is not actually broken, if the intervening event is one which might, in the natural and ordinary course of things, be anticipated as not entirely improbable, and the defendant's negligence is an essential link in the chain of causation.* * * *' "

Before applying these principles to the case *sub judice* it is necessary to state certain additional evidence not heretofore mentioned. The plaintiff, Mary Lamb, when asked what was stored in the open shed said: "Old, greasy burlap bags—oily, greasy, thick—chucked in there;"—that she saw many of them in the shed on June 6, 1946, the date of the fire, and every day during the five months prior thereto she had seen

five or six of the defendant's employees going in and out of the shed, sometimes with the bags, and she saw the metal shavings in them. Another witness, Katherine Lamb, testified that she had observed from her apartment the burlap bags, "oily like, as if they were wet," hanging on racks in the shed and there were some on the ground. The aforementioned Joseph Lamb who witnessed the fire in its early stages emerging as a "little flame" from the center of the floor in the shed, said the floor was then "* * * all covered over with bags." He also explained that there was a small space between the top of the fence and the roof of the shed, and as he waited for the guard to return from the factory with the fire extinguisher, since there was none on the lot, the flame spread and suddenly shot up through this space and hit the side of the house leaving the inference that this space acted as a funnel to draft the flame. Dr. Warner testified that air from three sides of the wire shed would be "the very thing that would feed a possible or probable fire," and that the oil in the bag which he examined was the kind generally used in drilling plants. Additionally, the testimony discloses that pieces of the aluminum shavings or turnings were seen on the ground in the shed near the burlap bags; that these turnings were all over the lot, and that children got them from bags out in the yard. Furthermore the storage of these bags away from defendant's plant, in a shed on an unimproved lot across the street, is strongly indicative that the defendant knew of their inflammability, and foresaw the danger inherent in their storage. It is fairly inferable from the great rapidity with which the fire spread, along with the accompanying explosion, that defendant had stored a considerable quantity of the burlap bags in the shed and that their condition was such as made them highly inflammable.

 Viewing all of the evidence and giving plaintiffs every reasonable and fair inference that can be drawn therefrom, and applying thereto the legal principles hereinabove considered, we think that the jury might well have found that the condition in which the defendant kept and maintained

the shed in question was one from which a person of ordinary experience and intelligence would have foreseen that the result complained of might ensue and, therefore, such was the proximate cause of the destruction of plaintiffs' property and that there was no intervening efficient cause, but one which contributed only to the result. We, therefore, conclude that the plaintiffs presented a *prima facie* case of defendant's liability which should have been submitted to the jury and failure so to do was reversible error.

We note plaintiffs' contention that the trial court erred in excluding certain sections of the Fire Prevention Code requiring a permit to keep, sell, use or handle certain types or categories of explosive or highly combustible substances. Suffice it to say that plaintiffs have failed to show themselves entitled to any evidential value from a violation thereof since the situation presently before us does not disclose that the storage of the burlap bags in the manner stated herein at the time of the fire came within the operation or contemplation of the code, nor that its purported violation was the proximate cause of the fire.

The judgment of the Appellate Division is therefore affirmed for the reason hereinabove expressed and a trial *de novo* is directed.

Wachenfeld, J., concurring in result.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For reversal*—None.